IN RE LANDIS ET AL.

(No. 81AP-984—Decided July 27, 1982.)

*Kemp, Schaeffer & Rowe Co., L.P.A.,* and *Mr. Harold R. Kemp,* for appellee Christina Landis.

*Mr. Michael L. Close,* for appellant Rex Landis.

WHITESIDE, P.J. Petitioner-appellant, Rex Landis, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and raises a single assignment of error, as follows:

"The trial court erred in enforcing by contempt a separation agreement incorporated into a final decree of dissolution requiring husband to pay for child's education at a religious institution by reason of the same being unenforceable under the terms of the Ohio Constitution, Article One, Section Seven, and the United States Constitution, First and Fourteenth Amendments."

The marriage of the parties was dissolved by a decree of dissolution approving and incorporating a separation agreement executed by the parties, providing that appellee, Christina Landis, have the care, custody and control of the minor children of the parties and that appellant would pay child support in a stipulated amount and, in addition, that:

"* * * Husband further agrees that the minor children of the parties shall attend Maranatha Christian School and that he will pay all tuition for each child for said schooling until each of them completes high school."

The decree was entered December 1, 1977, and appellant paid tuition for the school as required by the separation agreement at least until January 1981 when he filed a motion for modification of this provision of the separation agreement, contending that circumstances had changed so as to make the requirement unreasonable, unfair and burdensome, and because he did not understand the "long term implications of such an open-ended school tuition provision" at the time of the execution of the separation agreement. This motion apparently was overruled by entry entered May 22, 1981. A few weeks later, appellant filed a motion for relief from judgment, raising essentially the same issues as raised in his previous motion, which motion for relief from judgment was subsequently withdrawn. In September 1981, appellee filed a motion for a citation in contempt, alleging, as is germane here, that appellant had failed to pay the tuition for the parties' minor children's attendance at Maranatha Christian School. By a memorandum opposing this citation in contempt, appellant, for the first time, raised the contention that enforcement of this provision of the separation agreement would constitute a violation of the First and Fourteenth Amendments to the United States Constitution. An evidentiary hearing was conducted, resulting in an order of the trial court finding appellant in contempt for failure to pay tuition expenses in accordance with the separation agreement incorporated into the dissolution decree.

The essential issue upon appeal is whether enforcement of a separation agreement requiring a noncustodial parent to pay tuition for his children's education at a religiously oriented school constitutes unconstitutional state support of such religiously oriented school.

Specifically, appellant contends that enforcement of the separation agreement constitutes infringement upon the First Amendment to the United States Constitution, which has been held applicable to the states through the Fourteenth Amendment and states that Congress shall make no law prohibiting the free exercise of religion or respecting an establishment of religion. The Free Exercise Clause secures the right of religious belief and the right to practice and propagate one's faith unrestricted by government. The Establishment Clause prohibits the government's aiding one religion,

preferring one religion over another or aiding all religions. Construed in accordance with numerous United States Supreme Court decisions, taken together the two clauses require governmental neutrality in religious matters. Similarly, Section 7, Article I, Ohio Constitution provides in pertinent part that:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. * * *"

In support of his contention that enforcement of the separation agreement provision that he pay for his children's tuition at the religious school would be unconstitutional, appellant relies primarily upon the Lucas County Court of Common Pleas decision in *Hackett* v. *Hackett* (1957), 77 Ohio Law Abs. 98 [4 O.O.2d 245], which was affirmed by the court of appeals in *Hackett* v. *Hackett* (1958), 78 Ohio Law Abs. 485.

The issue involved in *Hackett* is somewhat different from that involved herein. In *Hackett,* the noncustodial parent attempted to compel the custodial parent to send their minor child to a parochial school in accordance with provisions of the separation agreement incorporated in a divorce decree, but contrary to the wishes and beliefs of the custodial parent. The Sixth District Court of Appeals stated at page 489:

"* * * The husband seeks to continue a practice, not compatible with the mother's wishes, which he could not harmoniously resolve while yet a member of the household. The child is now under the mother's custody. The promise was one dealing with a service which she is now not willing or completely able to satisfactorily perform. The child is as much her

child as that of the defendant-appellant with the additional fact that she has been awarded custody in an action in which a decree was entered because of his aggressions. She is now the head of the household of which he is no longer a member. * * *

"* * * it is our conclusion that the provisions of the Separation Agreement, dealing with the promise of the mother to see to it that the daughter, placed in her custody, be reared in the Catholic Faith and attend a school affiliated with the Catholic Church, cannot be enforced by judicial decree. * * *"

The *Hackett* trial court stated at page 100:

"* * * when the mother sends the child to this school she too supports and maintains the Catholic school and Catholic faith. * * *

"Regardless of what the mother assented to or solemnly promised, if the court were to *compel* her now * * * to keep her promise, that would appear to be compelling her to support or maintain a certain 'form of worship, against her consent.' Moreover, that would be an unpermitted 'interference with her rights of conscience.' * * *

"* * * Surely, it would be regarded as using the State 'as an engine for any purpose of the' Church to call upon the authority and power of the State to coerce the mother to send the child against her consent to any school extolling the tenets of any religion. * * *"

The gist of the decision in *Hackett* is that the custodial parent has a right to determine what school the child will attend, and enforcement of an agreement to send the child to a parochial school espousing religious beliefs contrary to the conscience and beliefs of the custodial parent constitutes an infringement upon her free exercise of religion.

The Ninth District Court of Appeals reached a similar conclusion, although in a case involving divided custody, stating in

*Majnaric* v. *Majnaric* (1975), 46 Ohio App. 2d 157 [75 O.O 2d 250], at page 162:

"* * * Since plaintiff had actual care and control, and sought an order to change schools, there is no conflict between her desires and the court order concerning public versus religious schools, and the issue of freedom of religion.

"The defendant, thus, has no standing to raise that constitutional issue, because the constitutional protection is afforded to the person having personal care and control of the children. * * *"

*Majnaric* also involved a divorce decree incorporating a separation agreement providing for education of children in a parochial school, and the court earlier in the decision held that the custodial parent generally has the right to determine which school the child will attend. This is consistent with the general rule that the right to determine the school children will attend, religious or secular, rests with the custodial parent where the parents are divorced or separated. Also, it has been generally held that prior agreements seeking to control the religious training of children will not be enforced against such a custodial parent frequently upon grounds of impracticality, lack of consideration, or the welfare of the child. Thus, in *O'Neill* v. *O'Neill* (1965), 45 Misc. 2d 1, 255 N.Y.Supp. 2d 776, it is stated at page 778:

"* * * As a mother has and will have custody of the child, it would lead to great conflict and probable injury to the child's psychological well-being to attempt to compel the mother to raise the child against the mother's will in a religion that is different from the religion of the mother's home and that would represent for the child a sharp, compulsory break from the religion with which she now feels herself to be affiliated and which she knows is the religion in which her mother wishes to raise her."

There are a few cases dealing directly with the constitutional issue. Most of those, however, like *Hackett,* are predicated upon an interference with the religious freedom of a custodial parent, since, in almost all instances, relief has been sought against a custodial parent to compel that parent to comply with a provision of a separation agreement as to the religious training of the child. See, however, *Gottlieb* v. *Gottlieb* (1961), 31 Ill. App. 2d 120, 175 N.E. 2d 619, in which an Illinois court enforced a separation agreement against the custodial parent in a case where apparently no constitutional issue was raised.

Here, appellant has raised no objection with respect to the religious upbringing of his minor child and has made no contention that the decree interferes with his own free exercise of religion. Rather, appellant apparently would leave to appellee the decision as to whether to send the children to a parochial, secular or public school, but merely feels that he should not be compelled to pay tuition in accordance with his promise to pay tuition if the children attend Maranatha Christian School. There appears to be no basis upon which it could be found that enforcement by the court of appellant's promise to pay his children's tuition would violate the Free Exercise Clause of the First Amendment. See *Committee for Public Education* v. *Nyquist* (1973), 413 U.S. 756, at page 786, wherein it is stated: "* * * while proof of coercion might provide a basis for a claim under the Free Exercise Clause, it was not a necessary element of any claim under the Establishment Clause." Thus, appellant's claim must rise or fall upon application of the Establishment Clause of the First Amendment. However, counterbalancing appellant's contentions are the rights afforded appellee under the Free Exercise Clause, including the right as custodial parent to determine whether the parties' children will attend a parochial, secular, private or public school. With respect to statutes, the United States Supreme Court set forth a three-pronged test for determining whether a statute

violates the Establishment Clause in *Lemon* v. *Kurtzman* (1971), 403 U.S. 602, stating at pages 612-613:

"In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: 'sponsorship, financial support, and active involvement of the sovereign in religious activity.' * * *

"* * * Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, * * * finally, the statute must not foster 'an excessive government entanglement with religion.' "

See, also, *Stone* v. *Graham* (1980), 449 U.S. 39.

Here, no statutory state action is involved. Rather, the sole issue is whether one party to a contract can obtain judicial enforcement of that contract against the other party who, although agreeable at the time, has now changed his mind with respect to the issue involved. Generally, contracts are enforceable if supported by consideration. The fact that they may involve a religious organization is ordinarily no justification for refusal to enforce a contract. If this position were taken, religious organizations would, in effect, be denied due process of law by being denied the right to enforce contracts supported by consideration and solemnly entered into with them merely because they pertained to the religious aspects of the organization. In this case, utilization of the Establishment Clause as an excuse not to require appellant to comply with his contractual promise not only could lead to an interference with appellee's rights under the Free Exercise Clause of the same First Amendment but, also, would appear to be inconsistent with the philosophy of Section 10 of Article I of the United States Constitution providing that: "No state shall * * * pass any

* * * law impairing the obligation of contracts * * *."

Thus, in this case, there must be a balancing of constitutional principles. The minimal involvement of the state in indirectly and consequently "supporting" the Maranatha Christian School by requiring appellant to pay tuition for his children in accordance with his contractual obligation must be balanced against the right of appellee, as custodial parent, under the Free Exercise Clause of the Constitution to send her children to a religiously oriented private school, as well as against the constitutional prohibition against the state's impairing the obligations of a contract.

When so balanced, the minimal "support" of religion is overwhelmed by the other considerations. Here, appellant promised to pay the tuition for his minor children, so long as appellee sent them to the Maranatha Christian School. His obligation is limited to the children's attendance at that particular school. Appellee has acceded to appellant's express wishes, which are apparently also hers, and has sent the children to that specific school, and, in the past, appellant has paid the tuition in accordance with his contractual obligation. To find the tuition payment provision of the separation agreement unconstitutional would permit appellant to misuse the First Amendment as a shield against responsibility for his breach of an agreement for monetary support of his minor children, which he entered into voluntarily. There has been no contention of lack of consideration for this, as well as other provisions of the separation agreement. Nor is there any evidence that appellee has monetary resources from which she independently can pay such tuition if appellant fails to fulfill his contractual promise. To deny appellee enforcement of appellant's promise to pay the tuition would have the effect of denying appellee the right to send her children to the school of her choice, a religiously oriented school, and, thus,

could constitute an interference with her free exercise of her religion, if her religious beliefs are such that she feels her children should attend such school. Appellee testified that the parties mutually decided upon this type of education for their children prior to the decision to separate and have the marriage dissolved. She further stated that she wanted the children to attend that school not only for the religious education but also "because of the high moral standards, the excellent education, the teachers are loving and understanding, and it's just a personal building block for the girls." She also testified that appellant paid tuition for the older child for three years and raised no objection until the time for the second child to start school.

The constitutional prohibition against state laws impairing the obligation of contracts has been recognized as a fundamental constitutional restriction since the celebrated case of *Trustees of Dartmouth College* v. *Woodward* (1819), 17 U.S. (4 Wheat.) 518. However, it has been held that Section 10, Article I of the United States Constitution is directed against legislative, rather than judicial, action. *E.g., Barrows* v. *Jackson* (1953), 346 U.S. 249. If a similar literal interpretation is made of the First Amendment, the same result would ensue. Like Section 10, Article I of the United States Constitution, the First Amendment prohibits the "making" of laws, which is legislative action, rather than judicial action. It would seem somewhat inconsistent to hold that the "passing" of laws within the contemplation of Section 10, Article I, has a different meaning than the making of laws within the contemplation of the First Amendment, especially since the First Amendment expressly refers to legislative, not judicial, action, stating "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof * * *." Unfortunately, logical consistency has not always been the hallmark of federal

judicial interpretation of various constitutional provisions. Nevertheless, the philosophy of the First Amendment must be considered in light of the philosophy of Section 10, Article I, as well as other provisions of the United States Constitution.

This means, therefore, that enforcement of a contract freely entered into by parties must be considered from a different standpoint than laws enacted imposing obligations upon persons. In other words, even assuming that it would be unconstitutional for the legislature to pass a law requiring a noncustodial parent to pay the tuition for attendance of his minor child at a religiously oriented school selected by the custodial parent, it does not necessarily follow that it would similarly be unconstitutional for a court to enforce a contract freely entered into by the parties supported by consideration. Enforcement of the contractual obligation to pay tuition does not constitute coercion by the state to perform a religious act or profess a religious belief. In this case, the only act that appellant would be required to perform is the payment of money in accordance with his contractual promise. There is no indication that appellant has changed his religious preference for his children but only that he no longer wishes to pay the tuition at Maranatha Christian School. As we have noted, refusing to enforce appellant's contractual obligation to pay tuition at the Maranatha Christian School could constitute interference with plaintiff's right as the custodial parent to rear her children in the religion of her choice. See *Pierce* v. *Society of Sisters* (1925), 268 U.S. 510, and *Prince* v. *Massachusetts* (1944), 321 U.S. 158, 165.

Appellant has pointed out, and this court has found, no case wherein it has been held that enforcement of a provision of a separation agreement for payment of tuition at a religiously oriented school constitutes a violation of either the Free Exercise or Establishment Clauses of the First Amendment. On the other hand, appellee has cited no cases expressly sup-

porting her position. On the precise issue at hand, this appears to be a case of first impression. However, the basic constitutional tenets involved would appear to permit only one conclusion — that reached by the trial court. It is quite difficult to understand how judicial enforcement of a contract for the payment of money can constitute violation of the Establishment Clause of the First Amendment, *i.e.,* constitute passing a law respecting an establishment of religion. If this were the case, the courts could not enforce promises, supported by consideration, to pay money to churches and other religious organizations, including a contract with a religiously oriented school to pay tuition for attendance of a student at the school. We find meager, if any, foundation for appellant's position.

Appellant's obligation is to pay money for the support of his children, including tuition for their attendance at a private school if that be reasonable and consistent with the standard of living the children would have enjoyed had the marriage continued. From the separation agreement, the trial court is entitled to assume that this is the case. Defendant has a contractual obligation to pay the tuition. Even assuming that he may prefer that his children attend a different private school and is willing to pay the tuition at such different school, the choice of schools is that of the custodial parent, appellee, with the burden of payment of the tuition having been assumed by appellant by contract. Divorced parents of children may contract to give benefits to their children beyond those that may be imposed by law. See *Robrock* v. *Robrock* (1958), 167 Ohio St. 479 [5 O.O.2d 165].

Accordingly, we conclude that enforcement of a separation agreement, supported by consideration, between the parents of a minor child, requiring the noncustodial parent to pay tuition for attendance of that child at a religiously oriented school, either specified in the agreement or selected by the custodial parent, violates neither the Establishment Clause nor the Free Exercise Clause of the First Amendment to the United States Constitution, nor the Religious Freedom Provision of the Ohio Constitution.[1]

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

MCCORMAC and STRAUSBAUGH, JJ., concur.

---

[1] Although we have assumed for purposes of this decision that *Hackett* correctly states the law of Ohio, this does not mean that this court is following *Hackett* or adopting its views. We do not determine herein whether enforcement of a similar clause of a separation agreement supported by consideration to require attendance of a minor child at a specific parochial school will constitute a violation of the First Amendment.