[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 533 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 534 
Appellant, Raymond Mark deLevie, and appellee, Judith Groner deLevie, were married in 1986. Shortly after their marriage, appellant gave up his employment as an attorney in order to attend medical school at Ohio State University. The parties agreed that, while appellant was in school, appellee would support the household through her pediatric practice, in which she earned approximately $68,000 per year.
In August 1988, while appellant was still a medical student, appellee gave birth to a son, Alan. Although appellant's class schedule allowed him time at home, during this time appellant evidently did not provide a significant amount of care to the child; instead, appellee was primarily responsible for Alan's feeding and personal care, and his transportation to the babysitter's home. Also during this time, the parties hired a live-in nanny but, according to appellee, the nanny required assistance and supervision which only appellee provided.
The marriage disintegrated shortly after the birth of the child, and appellee filed a complaint for divorce in January 1990. Nevertheless, appellant continued to reside in the marital residence and appellee continued to support appellant and pay his medical school expenses. Eventually, appellant completed medical school, moved out of the home and obtained a position with a Columbus law firm, earning an initial annual salary of $30,000.
Negotiations between the parties regarding child custody, property division, and spousal support were ultimately unsuccessful, and the matter was subject to a lengthy hearing in the fall of 1991. The trial court issued a decision in June 1992, followed by a judgment entry and decree of divorce in August 1992.
After dividing the parties' various investments, pension, personal property, and tax refunds, the trial court awarded appellee the marital residence, splitting the $42,000 equity in the property and allowing appellee five years to pay appellant $21,000 for his share, with interest.
Appellant sought shared parenting of Alan, which appellee opposed, but appellee submitted a shared parenting plan in the event that the court decided to order shared parenting. The court determined that shared parenting would not be in the best interest of the child and awarded custody to appellee. In determining custody, the court considered the fact that the parties were "utterly incapable of cooperating with each other in some very important decisions *Page 535 
concerning child-rearing," and cited as one example their disagreement on whether the child should be reared and educated in compliance with Orthodox Jewish traditions or pursuant to Reform Jewish traditions. The court concluded that:
"The Court finds so little common ground between the parties that a shared parenting plan would merely exacerbate the hostility caused by their fundamental differences of opinions on child rearing, would offer the opportunity of coercion and control by either party over the other and consequently would work to the great detriment rather than the best interest of the child. The Court rejects both plans, and declines to invite changes which would only further delay stability for the child."
Appellant now raises the following assignments of error:
"Assignment of Error No. 1
"The trial court's division of property was against the manifest weight of the evidence, contrary to law and constituted an abuse of discretion.
"Assignment of Error No. 2
"The trial court abused its discretion in failing to make orders relative to shared parenting and in failing to order shared parenting.
"Assignment of Error No. 3
"The trial court abused its discretion in designating appellee rather than appellant the residential parent and legal guardian of the minor child.
"Assignment of Error No. 4
"The trial court abused its discretion in its rote adoption of Loc.R. 27.
"Assignment of Error No. 5
"The denial of shared parenting premised on religious difference and Loc.R. 27 as applied herein is unconstitutional."
Appellant's first assignment of error charges that the trial court abused its discretion with regard to property division, because the court failed to rely upon the manifest weight of the evidence presented at trial.
Specifically, appellant argues the trial court erred in determining that appellant had failed to trace the down payment for, and cost of improvements to, the marital residence to his own nonmarital assets, in incorrectly setting the date of the end of the marriage for purposes of determining and dividing pensions, in improperly dividing appellee's Charles Schwab IRA accounts, in awarding appellee the marital residence and granting her five years to pay appellant her share of the equity in the marital residence, in dividing the income tax refunds for the *Page 536 
years prior to and during the pendency of the divorce, and in distributing the marital debt.
The trial court's authority to make a property division derives from R.C. 3105.171, which sets forth the following guidelines:
"(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
"(1) The duration of the marriage;
"(2) The assets and liabilities of the spouses;
"(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
"(4) The liquidity of the property to be distributed;
"(5) The economic desirability of retaining intact an asset or an interest in an asset;
"(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
"(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
"(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
"(9) Any other factor that the court expressly finds to be relevant and equitable."
Regarding appellant's claim that the evidence did not support the trial court's finding that payments relevant to the purchase and improvement of the marital residence were not traceable to appellant's nonmarital assets, we agree with the trial court that appellant failed to produce evidence establishing these funds were directly traceable to him. Instead, the evidence established that the funds came from the parties' joint checking account, which also contained an unidentified amount of appellee's income from her job. Finally, even if appellant had presented evidence tracing the funds, the trial court still was within its discretion in refusing to award appellant that money since the fact that appellant may have brought an asset into the marriage did not determine the disposition of the property, but was merely one factor to be considered under R.C. 3105.18. Kahnv. Kahn (1987), 42 Ohio App.3d 61, 536 N.E.2d 678; Sanzenbacherv. Sanzenbacher (1981), 3 Ohio App.3d 180, 3 OBR 206,444 N.E.2d 454. *Page 537 
Appellant argues that he was entitled to share in an additional six months of appellee's pension, because the trial court determined that the end of the marriage was at the time of the filing of the court's decision, six months after December 1991, the date of the hearing. Appellant also argues that he was entitled to share in the $2,000 contributed to appellee's IRAs during the marriage. First, the trial court had the discretion to ascribe a date to the end of the marriage which it deemed equitable. R.C. 3105.171(A)(2)(b). Second, even if appellant could be construed to be entitled to an additional share of appellee's pension and IRA accounts, the trial court did not abuse its discretion in light of the total property division. See Briganti v. Briganti (1984), 9 Ohio St.3d 220, 9 OBR 529,459 N.E.2d 896; see, also, Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 541 N.E.2d 597.
We also reject appellant's argument that the trial court abused its discretion in awarding appellee the marital residence with five years to pay off appellant's interest in the home. Pursuant to R.C. 3105.171(F)(3), the court was entitled to consider, when making the award, that appellee would have custody of the child. In addition, given the costs to appellee of litigating the divorce, the fact that appellee was assuming the mortgage and other costs associated with ownership of the home, and that she was assuming debts incurred in connection with appellant's medical school education, it was not unreasonable for the court to grant appellee five years to pay appellant his share of the home equity.
Appellant maintains that he was entitled to share in appellee's 1991 income tax refunds but that the trial court failed to make such an award. However, appellant admits that the tax return was not in evidence at the hearing since the hearing had concluded in December 1991, before any tax refund for 1991 would have been determined. There is no evidence that appellant attempted to obtain the court's consideration of this issue during the period between the conclusion of the hearing and the release of the court's decision and judgment entry. Therefore, the court did not abuse its discretion in failing to rule on any 1991 refund. Nor did the court abuse its discretion in granting appellee the 1990 refund, given the total circumstances surrounding the property division in this case.
With regard to the trial court's distribution of the marital debt, appellant primarily argues that appellee should have been ordered to pay a dentist bill for him in the amount of approximately $1,000. He additionally claims that, given the disparity in the parties' respective incomes, and what appellant deems was a small temporary spousal support award, appellee should have been charged with a greater proportion of appellant's debt. The trial court's decision indicates the court's awareness that this was a marriage of short duration, with both parties *Page 538 
being highly educated professionals, and that appellant possesses an earning capacity equal to that of appellee. Moreover, the court was aware that appellant's decision to temporarily leave the practice of law to obtain a medical degree was voluntary, as were the debts associated with medical school and the loss of income represented by appellant's temporary lack of employment. Finally, the court's temporary spousal support award recognized that appellee was already paying some of appellant's expenses directly. Based upon the total circumstances before the court below, we cannot say that the court abused its discretion in its distribution of the marital debts.
In reviewing a property division, we may not reverse the judgment of the trial court absent a finding of an abuse of discretion. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 20 O.O.3d 318, 421 N.E.2d 1293. An abuse of discretion connotes more than just an error in judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481,450 N.E.2d 1140. A reviewing court may not substitute its judgment for that of the trier of fact unless the lower court's decision amounts to an abuse of discretion. Martin v. Martin (1985),18 Ohio St.3d 292, 18 OBR 342, 480 N.E.2d 1112. The goal of the trial court is to reach an equitable result; "[t]he method by which the goal is achieved cannot be reduced to a mathematical formula." Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 96,518 N.E.2d 1197, 1200.
The court's property division was reasonable in light of the duration of the marriage, the earning capacity of the parties, and the debts incurred by the parties in pursuing this litigation. During the parties' short marriage, appellant was voluntarily unemployed while preparing for a career which now gives him an earning capacity equal to appellee's, and his present lower income is not a reason to now award appellant additional property.
Based upon these considerations, we find the trial court's property division determinations were not unreasonable, arbitrary or unconscionable, and so the court did not abuse its discretion. Appellant's first assignment of error is overruled.
Appellant's second and third assignments of error concern the propriety of the trial court's custody determination and will be addressed together. Appellant essentially argues that the differences in the parties' shared parenting plans were not significant and, because the trial court had the authority pursuant to R.C. 3109.04 to order shared parenting over the objection of appellee, the court should have adopted a shared parenting plan. Appellant additionally asserts that the alternative to granting shared parenting was to grant custody to appellant who, *Page 539 
he alleges, was the parent most likely to facilitate visitation and otherwise cooperate with the other parent.
Regarding appellant's comparison of the two shared parenting plans, appellee asserted, and the trial court found, that appellee did not, in fact, want shared parenting, but merely submitted the plan in the event that the court deemed shared parenting to be appropriate. Although R.C. 3109.04 gives the trial court authority to order shared parenting over the objection of one of the parties, the court's decision is discretionary:
"If at least one parent files a pleading or motion in accordance with division (G) of this section and a plan for shared parenting pursuant to that division and if a plan for shared parenting is in the best interest of the children and is approved by the court in accordance with division (D)(1) of this section, the court may allocate the parental rights and responsibilities for the care of the children to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children in accordance with the approved plan for shared parenting. * * *" (Emphasis added.) R.C. 3109.04(A)(2).
The focus of any decision regarding child custody must be the best interests of the child and, where an award of custody is supported by a substantial amount of credible and competent evidence, it will not be reversed as being against the manifest weight of the evidence. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178.
In the case before us, the trial court determined that the parties were unwilling and unable to agree on basic decisions regarding Alan's upbringing, most notably in the area of religious education. While asserting that he was willing to cooperate on decisions regarding Alan's care, appellant continued to press his point that appellee obdurately refused to communicate or cooperate with him, and that appellee is unbending on the issue of Alan's religious upbringing. Thus, appellant essentially admits that the parties are unable to agree. Regardless of which party is to blame for the parties' inability to reach an agreement, there nevertheless remain basic, irreconcilable differences in their approaches to Alan's care, which differences the trial court found would ultimately work against Alan's best interests. The trial court did not abuse its discretion in refusing to grant shared parenting under the facts of this case.
Neither did the court abuse its discretion in refusing to grant appellant sole custody of the child. Testimony elicited during the hearing caused the trial court to conclude that, in the time period which had elapsed between appellant's departure from the marital residence and the date of the hearing, each parent had provided loving care to Alan, and that the parties had been able to cooperate *Page 540 
to some extent in coordinating visitation. There was no indication that either parent would be unfit to receive custody of Alan, nor is it apparent that the trial court failed to consider factors outlined in R.C. 3109.04(F)(1).[1] Thus, regarding these facts it may be said that:
"There is no doubt that in this case either parent would be a fit person for custody of the child involved. A finding for either parent could be premised upon this record. * * *"Bechtol at 22, 550 N.E.2d at 180.
In Bechtol, at 23, 550 N.E.2d at 180, the court concluded that:
"Our review of the record reveals that evidence was presented on almost every factor found in R.C. 3109.04[F] for consideration by the trial court. Some of the factors were not disputed, but it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses. * * *"
Based upon the evidence presented in the court below, we do not find that the trial court's decision to award custody to appellee was unreasonable, arbitrary or unconscionable. Because the award was based upon a substantial amount of credible and competent evidence, and because this court must defer to the trial court's factual determination that appellee was the appropriate parent to receive custody, we reject this argument by appellant.
Appellant's second and third assignments of error are overruled.
Appellant's fourth assignment of error argues that the trial court abused its discretion in adopting Loc.R. 27 of the Court of Common Pleas of Franklin County, Domestic Relations Division, as a method of determining a visitation schedule, because that rule does not provide a visitation schedule for Jewish holidays. According to appellant, the trial court ignored evidence that, during the pendency of the divorce action, the parties had made temporary arrangements regarding these holidays which appeared to have been satisfactory; instead, the court "arbitrarily" adopted appellee's plan for visitation on Jewish holidays without considering appellant's wishes.
With regard to visitation on Jewish holidays, the trial court's judgment entry states as follows: *Page 541 
"* * * The Defendant shall be awarded Rule 27 visitation, plus other additional visitation as the parties may agree. With regard to religious holidays, the parties shall alternate Rosh Hashana and Yom Kip[p]ur from year to year. Additionally, the parties shall alternate the first two days of Passover with each party having one of the two days each year. The first and second days of Chanukkah are to be alternated with the remaining days of Chanukkah equally divided.
"All Jewish holidays which are alternated are to begin at 6:00 p.m. the evening before the holiday and to continue until 6:00 p.m. the night of the return of the child."
Appellant's argument essentially asserts that the trial court abused its discretion in failing to adopt the temporary visitation schedule in its permanent order. In disposing of this matter, the trial court was not required to continue any practice which had occurred during the pendency of the divorce. Moreover, it is not apparent from the visitation schedule that the trial court was acting arbitrarily in setting up visitation in the manner adopted. As there was no abuse of discretion, appellant's fourth assignment of error is overruled.
Appellant's fifth assignment of error charges that the trial court unconstitutionally denied shared parenting based upon the religious differences of the parties, in effect deciding for the child the religious content of his upbringing. Evidence adduced at trial indicated that appellee was raised in the Orthodox Jewish tradition, and that it is her intention to raise Alan in this tradition and to send him to a Jewish day school, rather than to public school. Appellant, on the other hand, was raised in the Reform Jewish tradition, and desires that Alan attend public school, while receiving extra-curricular training in the Jewish faith.
Appellant asserts that the trial court's refusal to order shared parenting due to the parties' religious differences, and knowing appellee's determination to raise Alan as an Orthodox Jew, constituted a violation of the principle of separation of church and state as set forth in the Ohio and United States Constitutions.
The parties' religious differences were not the only basis for the trial court's conclusion that shared parenting was not in the best interest of the child. Indeed, the court recognized that the parties' religious differences were only a symptom of a greater problem which was the parties' inability to cooperate or communicate on basic issues surrounding Alan's care and upbringing.
Appellant is not arguing that the trial court expressly determined that it was in Alan's best interest to be raised in the Orthodox tradition. Instead, appellant claims that the effect of the trial court's refusal to award shared parenting, and the choice of appellee as the sole custodian, was to force Alan to be raised in the *Page 542 
Orthodox tradition, thus interfering with Alan's and appellant's constitutional rights.
This court has previously established the right of the custodial parent to determine the religious upbringing of the child. In re Landis (1982), 5 Ohio App.3d 22, 5 OBR 24,448 N.E.2d 845, upheld in Rand v. Rand (1985), 18 Ohio St.3d 356, 18 OBR 415, 481 N.E.2d 609. Absent evidence in the record that the trial court's custody decision was motivated by a conviction that either parent's particular religious belief, or lack thereof, was in the best interest of the child, we hold that the trial court's custody determination in this case does not raise an issue of whether the court violated either the Establishment Clause or the Free Exercise Clause of the First Amendment to the United States Constitution, or the Religious Freedom Provision of the Ohio Constitution.[2]
Nor is the trial court's order that the parties adhere to Loc.R. 27 of the Court of Common Pleas of Franklin County, Domestic Relations Division, which does not expressly provide for the sharing of Jewish holidays, an impermissible interference with the religious rights of the parties. The rule states that:
"* * * Specific items in the Journal Entry take precedence over this schedule. Changes or modifications can be made by the Court if need for such is shown. * * *"
Therefore, the rule allowed the trial court to change the rule's visitation schedule to fit the needs of the parties. In this instance, the trial court did so and appellant's dissatisfaction with the results is not a basis for a determination that the trial court violated the parties' constitutional rights. Appellant's fifth assignment of error is overruled.
Appellant's first, second, third, fourth and fifth assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
WHITESIDE and STRAUSBAUGH, JJ., concur.
DEAN STRAUSBAUGH, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section6(C), Article IV, Ohio Constitution.
[1] Such factors include:
"(a) The wishes of the child's parents regarding his care;
"* * *
"(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to his home, school, and community;
"(e) The mental and physical health of all persons involved in the situation;
"(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court[.]"
[2] Section 7, Article I of the Ohio Constitution provides:
"* * * No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. * * *"
The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" *Page 543