**SMITH, Appellant,**

v.

**NULL, n.k.a. Testani, Appellee.**

[Cite as *Smith v. Null* (2001), 143 Ohio App.3d 264.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 00CA21.

Decided Jan. 29, 2001.

*W. Mack Anderson,* for appellant.

*Marty J. Stillpass,* for appellee.

HARSHA, Judge.

Michael Barry Smith appeals the decision of the Lawrence County Common Pleas Court, Juvenile–Probate Division, ordering him to pay forty percent of his son's private school tuition. He assigns the following errors:

"I. The order of the trial court requiring a parent, against his or her will, to pay tuition for the child of the parent to attend a religious school violates the First and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 7 of the Ohio Constitution.

"II. A court lacks jurisdiction to order a parent, absent that parent's agreement or consent, to pay, in addition to child support, tuition for the child of the parent to attend a private school when public schools are available.

"III. The order of the trial court, finding the child had 'special needs' which justified ordering the non–custodial parent to pay tuition to a private school in addition to child support, was against the manifest weight of the evidence, as there was no evidence to support such finding."

I

Michael Robert Smith (d.o.b. 10/16/91) is the son of appellant and appellee, Cynthia Null, n.k.a. Testani, who were never married. In June 1993, appellant filed a parentage action and was determined to be Michael Robert Smith's father. He was ordered to pay child support and was granted visitation.

In January 2000, appellant filed a motion to reduce child support. Appellee responded with a motion requesting that appellant pay a portion of their son's tuition at St. Joseph Elementary School, a private Catholic institution. The magistrate conducted a hearing and issued a decision recommending a reduction

in appellant's child support obligation and requiring appellant to pay forty percent of his son's tuition at St. Joseph's.[1] After appellant filed an objection, the trial court issued its decision affirming the magistrate's recommendation regarding the payment of tuition. The court stated:

"[I]t is the Court's opinion that such payment, in the event the placement decision is unilateral as between the parties and inconsistent with the child's prior educational experience, should then be the full responsibility of the placing parent absent special needs of the child. In this particular case as set forth in the Magistrate's Decision indicates factors have been considered by the Magistrate indicating the special needs of this individual child. The Magistrate has considered appropriate factors and therefore the Court adopts the recommendation of the Magistrate. Special educational needs of a child permit the varying from the child support guidelines to increase the father's support to best meet the needs of the child.  * * *"

Appellant filed a timely appeal from this decision.

## II

In his first assignment of error, appellant asserts that the trial court's order requiring him to pay tuition for his son to attend a religious school violates the First and Fourteenth Amendments to the United States Constitution and Section 7, Article I of the Ohio Constitution. We disagree.

The First Amendment to the United States Constitution states that Congress shall make no law prohibiting the free exercise of religion or respecting an establishment of religion. This amendment has been held applicable to the states through the Fourteenth Amendment. The Free Exercise Clause secures the right of religious belief and the right to practice and propagate one's faith without governmental restriction. The Establishment Clause prohibits the government's aiding one religion, preferring one religion over another, or aiding all religions. In accordance with numerous United States Supreme Court decisions, these two clauses require governmental neutrality in religious matters. *In re Landis* (1982), 5 Ohio App.3d 22, 24, 5 OBR 24, 25–26, 448 N.E.2d 845, 847–848. Section 7, Article I of the Ohio Constitution provides:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of

---

1. The magistrate determined that when appellant's and appellee's incomes were combined, appellant earned approximately forty percent of the total income. Therefore, he should be responsible for forty percent of his son's educational expenses rather than fifty percent.

worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted.  * * *"

Appellant does not argue that appellee should not be allowed to send their son to St. Joseph's.  He concedes that, as the custodial parent, she is entitled to send him to a parochial, secular, or public school.  See *id.* at 25, 5 OBR at 26–28, 448 N.E.2d at 848–849.  Rather, he contends that he should not be compelled to pay tuition to a Catholic school.  Appellant does not argue that the lower court restricted his right of religious belief or to practice and propagate his own faith.  Therefore, the Free Exercise Clause is not implicated.  Instead, appellant contends that the court is aiding one religion and compelling him to support a place of worship against his consent in violation of the Establishment Clause and the Ohio Constitution.

In *Rand v. Rand* (1985), 18 Ohio St.3d 356, 18 OBR 415, 481 N.E.2d 609, the Supreme Court of Ohio held that judicial enforcement of a noncustodial parent's agreement to pay for his son's religious education does not violate Section 7, Article I of the Ohio Constitution.  Appellant correctly notes that *Rand* is not directly on point because in this case appellant never agreed to pay for parochial education.  However, in Chief Justice Celebrezze's concurrence he noted that requiring a parent to pay for a religious education does not violate the Establishment Clause; it is a permissible form of financial child support that is designed to partially reimburse the custodial parent for an expense she incurred in rearing their child.  *Id.* at 360, 18 OBR at 418–419, 481 N.E.2d at 612–613.

Similarly, in *Chrnko v. Chrnko* (May 7, 1987), Cuyahoga App. No. 52103, unreported, 1987 WL 11194, the Eighth District Court of Appeals held that ordering the father to pay for a parochial education does not violate the Establishment Clause even though he did not consent to do so.  *Chrnko* is distinguishable somewhat in that the children were attending parochial school before the parents' divorce, with at least tacit approval by their father, and the court merely maintained the *status quo*.  In *Dunson v. Aldrich* (1988), 54 Ohio App.3d 137, 561 N.E.2d 972, the Tenth District Court of Appeals was asked to determine whether a father could be ordered to pay for the mother's church donations incurred on behalf of their son.  The court held that "to the extent that an expense is incurred due to a custodial parent's decision to raise a minor child in a particular religion, a support order which includes such expense does not impinge upon rights guaranteed by the Establishment Clause of the First Amendment."  *Id.* at 141–142, 561 N.E.2d at 977.  However, the court ultimately disallowed the expense on the ground that there was no evidence that the award was necessary for the child's support.

We have also considered the Superior Court of New Jersey's decision in *Hoefers v. Jones* (1994), 288 N.J.Super. 590, 672 A.2d 1299. In *Hoefers*, as in *Rand,* the court was asked to determine whether enforcement of an agreement to pay for private school violates the father's First Amendment rights. In answering this question in the negative, the court noted that payments for a child's education are a parent's obligation. *Id.* at 1308. The court also indicated that these payments were made to the church-sponsored school for activities or other child-rearing needs that are part of the father's parental obligations as opposed to payments made directly to the institutions for their support. *Id.* at 1309. Furthermore, the payments were made on the children's behalf rather than the father's and, to the extent the children were receiving religious instruction, it was consistent with their religious and moral beliefs as determined by their custodial mother. *Id.* The Appellate Court of Connecticut also noted that such payments are not made directly to a parochial school but rather to the custodial parent, and the government was not expressing a preference for a particular religion in requiring these payments. *Flynn v. Flynn* (1986), 7 Conn.App. 745, 510 A.2d 1005, 1006–1007 (analyzing the tuition payment requirement under the Connecticut Constitution).

Our review of the Ohio and United States Constitutions and the rationale of the cases cited above leads us to conclude that the trial court's order does not violate appellant's constitutional rights. Therefore, we overrule appellant's first assignment of error.

## III

In his second assignment of error, appellant alleges that the trial court lacked jurisdiction to order him to pay private school tuition when public schools are available. Again, we disagree.

R.C. 3109.05(A)(1) provides that in a child support proceeding, "the court may order either or both parents to support or help support their children * * *. In determining the amount reasonable or necessary for child support, including the medical needs of the child, the court shall comply with sections 3113.21 to 3113.219 of the Revised Code." R.C. 3113.215(B)(1) states that when issuing or modifying a support order, the court must calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule in division (D), the applicable worksheet in division (E) or (F), and the other provisions of the section. Once the court calculates that amount of child support, it is *rebuttably* presumed to be the correct amount of support due and the court shall order that amount to be paid as child support *unless both of the following apply with respect to an order issued by the court:*

"(a) *The court,* after considering the factors and criteria set forth in division (B)(3) of this section, *determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet* in division (E) of this section, through line 24, or in division (F) of this section, through line 23, *would be unjust or inappropriate and would not be in the best interest of the child.*

"(b) The *court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet* in division (E) of this section, through line 24, or in division (F) of this section, through line 23, *its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.*"   (Emphasis added.)   R.C. 3113.215(B)(1).

The court may consider any of the following factors and criteria when determining whether the standard amount of support would be unjust or inappropriate and not in the best interest of the child:

"(a)  Special and unusual needs of the children;

"\* \* \*

"(*l* )  The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

"(m)  The physical and emotional condition and needs of the child;

"(n)  The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;

"\* \* \*

"(p)  Any other relevant factor."   R.C. 3113.215(B)(3).

In addition, the court shall issue a separate order for extraordinary medical or dental expenses, including "appropriate private education," and may consider the expenses in adjusting the order of support.   R.C. 3113.215(B)(5)(f).

■    Based on a plain reading of this statutory scheme, it is clear that a trial court can award child support above and beyond the standard amount.   The above-cited sections grant the trial court the authority to make such an award for purposes of private school tuition when necessary.[2]   Therefore, the court had

2.  Appellant has not argued on appeal that the trial court erred in not making the required statutory findings.   Therefore, we do not address this issue.

jurisdiction to make such an award and appellant's second assignment of error is overruled.

## IV

In his final assignment of error, appellant alleges that the trial court's finding that his son had "special needs" which justify the award of private school tuition assistance was against the manifest weight of the evidence, as there was no evidence to support such a finding.

Under Civ.R. 53(E)(3)(b), a party cannot assign as error on appeal the court's adoption of a finding of fact or conclusion of law unless the party filed such an objection with the trial court following the magistrate's decision. Further, if a party objects to such a finding, he must supply the trial court with a copy of the transcript. Here, appellant filed objections to the magistrate's decision with the trial court but objected only on the ground that the magistrate's finding was contrary to law. He did not assert that the magistrate's factual conclusions were inaccurate or provide the trial court with a copy of the transcript. This amounts to waiver of the issue.

Therefore, appellant's third assignment of error is overruled.

*Judgment affirmed.*

PETER B. ABELE, P.J., and KLINE, J., concur.