DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Toledo Municipal Court, Small Claims Division, finding in favor of appellee, Brondes Ford. Appellant, Daniel M. Sauvey, appeals that judgment and asserts the following assignment of error:
 {¶ 2} "The trial court committed reversible error by rejecting the findings and recommendation of the magistrate and entering final judgment in favor of appellee."
 {¶ 3} On May 17, 2001, appellant filed a complaint against Brondes Ford in small claims court in which he contended that appellee violated the Ohio Consumer Sales Practices Act ("Act"), specifically, R.C. 1345.02, and three of the administrative rules promulgated in furtherance of the Act, namely, Ohio Adm. Code 109:4-3-10 and Ohio Adm. Code 109:4-3-16(B)(3)and 4-3-16(B)(22).
 {¶ 4} The factual basis for appellant's complaint was his purchase of a used truck, costing $27,550, from Brondes Ford. Appellant stated that the purchase was based upon Brondes Ford's representation that the truck had an axle ratio of 3.73. Appellant claimed that he later learned that the truck had a less desirable axle ratio of 4.1. He alleged that the cost of upgrading the axle so that it has 3.73 ratio would cost $2,623.37. Although appellant was entitled to treble damages under R.C.1345.09(B), he requested an award of $3,000 plus attorney's fees and costs. In addition, at the start of the hearing on appellant's complaint, appellant's trial counsel reiterated, on three occasions, that his client was limiting his award of damages to $3,000.
 {¶ 5} At the hearing, which was held before a magistrate, appellant provided the following testimony. Appellant stated that he needed a pickup truck to tow his boat and for transportation to work in the winter. Furthermore, because he travels some distance back and forth to work each day, appellant wanted a truck that had good fuel mileage. Therefore, he shopped for a truck with a diesel engine and a lower axle ratio.
 {¶ 6} Appellant used the Internet to find the truck with the qualities that he desired. On AutoTrader.com, appellant found an advertisement submitted by Brondes Ford for the 1999 Ford pickup that he eventually purchased. The listed axle ratio for the truck was 3.73. The advertisement indicated that the truck was available at Brondes Ford and noted that the dealership had a website.
 {¶ 7} Appellant testified that the photograph of the truck on AutoTrader.com was captioned "Stock Photo Shown. "To appellant, the use of the term "stock" in the caption signified that this was not the particular used pickup offered for sale. Instead, it was a stock, that is, generic, photo of a "1999 Ford 1 Ton Pickup F350 Super Duty." Since the "features" section of the advertisement did not state that the listed items, including the 3.73 axle ratio, were stock, appellant believed that these features were on the specific pickup offered by Brondes Ford.
 {¶ 8} Appellant subsequently visited the Brondes Ford website to check on the VIN number of the truck. This website did not list any of the features enumerated in the AutoTrader.com advertisement. When appellant then went to the dealership to look at the vehicle, he did not ask the salesperson any questions about the axle ratio. On December 28, 2000, appellant purchased the Ford pickup. The sales agreement does not show the axle ratio of the truck purchased.
 {¶ 9} Appellant soon noticed that the pickup was "running a lot more RPM." When appellant looked underneath the vehicle, he learned that it had a 4.1 axle ratio. Appellant talked to Mr. Brondes about his discovery and was told that the dealership would not remedy the problem. He then went to Whitman Ford and obtained the estimate of $2,623.37 for the axle ratio adjustment. Appellant also testified that the difference in the axle ratios caused a two mile per gallon deficiency in mileage.
 {¶ 10} Donald Reed, the Used Vehicle Manager at Brondes Ford, stated that the dealership contracted with Manheim, an auto auction company that owns AutoTrader.com, to place advertisements for Brondes Ford's motor vehicles on the AutoTrader website. Reed explained that Manheim obtained information for the motor vehicle advertisements from the Brondes Ford inventory, and that these included only the stock photo, the stock number, the price, the color, and comments (naming various options such as air conditioning and automatic transmission). Reed maintained that the "features" section was not supplied by Brondes. He did, however, admit that he had reviewed "a number of the vehicles on AutoTrader.com, not this specific one, but I know from experience that they're not always right." Reed further stated that if he would have "caught" the error in the advertisement, it would have been changed. He also acknowledged the fact that, depending on the manner in which the consumer was planning to use a truck, the axle or gear ratio was a consideration in making a purchase.
 {¶ 11} Brondes Ford also offered into evidence a "Visitor Agreement" posted on the AutoTrader website that provides, in pertinent part:
 {¶ 12} "The material that appears on AutoTrader.com is for informational purposes only. Despite our efforts to provide useful and accurate information, errors may appear from time to time. Before purchasing goods or services you've read about on AutoTrader.com, you should confirm with the vendor any information (including the price) that is important to your purchasing decision. AutoTrader.com is not responsible for, and does not guarantee the performance of, any such goods and services."
 {¶ 13} Brondes Ford argued, in essence, that the Visitors Agreement placed a responsibility on appellant to, prior to purchase, either inquire or look underneath the vehicle in order to ascertain whether the pickup had a 3.73 axle ratio. Appellant testified that he never saw the Visitors Agreement on the AutoTrader website.
 {¶ 14} In his decision, the magistrate set forth findings of fact based upon the evidence adduced at the hearing. He then concluded that by allowing the posting of the incorrect axle ratio on AutoTrader.com, Brondes Ford violated R.C. 1345.02(B), R.C. 1345.03(A), Ohio Adm. Code109:4-3-10, Ohio Adm. Code 109:4-3-16(B)(3) and Ohio Adm. Code109:4-3-16(B)(22). The magistrate recommended that the trial court award appellant treble damages and set the matter of attorney's fees for further hearing.
 {¶ 15} Brondes Ford filed timely objections to the magistrate's report, arguing that because the axle ratio was material to the purchase, appellant had a duty to inquire and/or inspect the pickup truck. Appellee further asserted that because a "good faith error" occurred in this cause, appellant was not entitled to treble damages. In the alternative, Brondes Ford contended that appellant was limited to the amount of damages requested in his complaint.
 {¶ 16} After conducting a separate hearing, the municipal court judge sustained appellee's objections. As to R.C. 1345.02, Ohio Adm.Code: 109:4-3-10, and Ohio Adm. Code 109:4-3-16(B)(3), the judge held, in relevant part:
 {¶ 17} "There is no evidence that Defendant or any of its sales persons advertised or made any statements to the Plaintiff to create a false impression regarding the wheel axle ratio. * * * The Court believes that a reasonable consumer would make no assumption or conclusion regarding information obtained from the website. A reasonable consumer would accept the information and then do his or her investigation. The Court cannot accept that the Ohio legislature intended to protect consumer transactions where the alleged party fails to accept appropriate responsibilities in the purchase of a consumer good, particularly where the purchase is one of this significance." Based on these conclusions, the municipal court found that appellant failed to prove, by a preponderance of the evidence, that Brondes Ford violated R.C. 1345.02. For the same reasons, the municipal court also rejected the viability of any claim under Ohio Adm. Code 109:4-3-16(B)(22). In what is apparently dicta, the judge concluded that she was not convinced that appellant named the correct defendant in his suit.
 {¶ 18} On appeal, appellant alleges that the trial court's judgment is erroneous in several respects. These allegations can be condensed into two major arguments. First, appellant asserts that the trial court erred in essentially finding that the advertisement on AutoTrader.com was not a representation made by Brondes Ford. Second, appellant contends that the trial court erroneously placed a burden on the consumer that does not exist under the Act. That burden is the requirement that a consumer reasonably investigate a representation made by a supplier[1] or motor vehicle dealer[2] in an advertisement prior to entering into a consumer transaction[3]. Because these contentions present questions of law, we apply a de novo standard of review.Cincinnati Entertainment Assoc., Ltd. v. Hamilton Cty. Bd. of Commrs.
(2001), 141 Ohio App.3d 803, 810.
 {¶ 19} It is undisputed that Brondes Ford's sale of a motor vehicle to appellant is a "consumer transaction" within the meaning of R.C. 1345.01(A). It is also undisputed that the deceptive communication upon which appellant relied is part of an "advertisement" as defined in Ohio Adm. Code 109:4-3-01(C)(5)[4]. The question before us is who was ultimately responsible for that communication.
 {¶ 20} We view the advertisement on AutoTrader.com as we would any other kind of advertisement placed by a supplier/dealer. It was Brondes Ford who contracted with Manheim for the placement of advertisements on AutoTrader.com. These advertisements described various used vehicles for sale at Brondes Ford. Thus, it was Brondes Ford who as the supplier/dealer had the duty to verify the statements in an advertisement concerning a particular motor vehicle the dealership was offering for sale. Reed tacitly conceded this responsibility when he testified that he knew that some of the AutoTrader.com advertisements contained incorrect information and that he would have corrected the ad in question if he would have "caught" the error.
 {¶ 21} Moreover, the AutoTrader.com disclaimer goes to Manheim's liability for mistakes rather than to Brondes Ford. It does not shift responsibility for the accuracy of an advertisement from the supplier/dealer to the medium in which the advertisement is placed. Therefore, the trial court erred in making Manheim responsible for the accuracy of the contents of Brondes Ford advertisements.
 {¶ 22} In addressing the second issue raised by appellant, we must recognize that the purpose of the Act is to protect consumers from the harm of deceptive or unconscionable sales practices committed by suppliers/dealers. Crye v. Smolak (1996), 110 Ohio App.3d 504, 512;Fletcher v. Don Foss of Cleveland, Inc. (1993), 90 Ohio App.3d 82, 81. It is a remedial law "designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11."Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, 29 (citation omitted). Consequently, neither the Act, the Ohio Administrative Code nor Ohio case law interpreting the Act requires the consumer to "reasonably investigate" either the statements made in an advertisement or the oral statements of a supplier/dealer prior to purchase. We believe that to do so would defeat the remedial nature of the Act. Accordingly, we find that the trial court erred in imposing this burden on appellant. For these reasons, appellant's sole assignment of error is found well-taken.
 {¶ 23} Because all but one of Brondes Ford's objections to the magistrate's decision were based upon a consumer's alleged duty to "ask or inspect a vehicle" if he or she requires some specific feature, Brondes Ford waived any other arguments with respect to the findings of fact and conclusions of law set forth in the magistrate's decision. Smithv. Null (2001), 143 Ohio App.3d 264, 271; Cunningham v. Cunningham, 4th Dist. No. 01CA2810, 2002-Ohio-4094 at ¶ 8. Brondes Ford did object specifically to the award of treble damages both at the trial court level and on appeal. However, the court below did not reach this issue or the question of attorney's fees. Therefore, we must remand this cause to the trial court solely for a determination of: (1) whether appellant was entitled to treble damages and, concomitantly, the amount of his damages; and (2) the question of attorney's fees.
 {¶ 24} On consideration whereof, this court finds that substantial justice was not done the party complaining, and the judgment of the Toledo Municipal Court is reversed. This cause is remanded to that court for further proceedings consistent with this judgment. Brondes Ford is ordered to pay the costs of this appeal.
JUDGMENT REVERSED.
Peter M. Handwork, P.J., Richard W. Knepper, J., and Arlene Singer, J.
[1] The Act defines a "supplier" as a "* * * seller, lessor * * * engaged in the business of effecting or soliciting consumer transactions * * *." R.C. 1345.01(C).
[2] A "dealer" is any "person engaged in the business of selling, offering for sale or negotiating the sale of five or more vehicles during a twelve month period * * *." Ohio Adm. Code 1094-3-16(A)(1).
[3] Under the Act, a "`Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or an intangible * * *."
[4] Ohio Adm. Code 109:4-3-01(C)(5) provides: "Advertisement" means any written, visual, or oral communication made to a consumer by means of personal representation, newspaper, magazine, circular, billboard, direct mailing, sign, radio, television, telephone or otherwise, which identifies or represents the terms of any item of goods, service, franchise, or intangible which may be transferred in a consumer transaction.