OPINION
{¶ 1} This matter is before the court on separate notices of appeal filed by Carl and Frances McColloch from an order of the Juvenile Court awarding permanent custody of their three minor children, Dakota McColloch, Kayn McColloch and Karleana McColloch, to the Greene County Children's Services Board ("CSB"). Frances McColloch is the mother of all three children. Carl McColloch is the father of Kayn and Karleana (the twins), but not Dakota. Frances and Carl McColloch are half-siblings, sharing the same father. The court's permanent custody order was entered on March 12, 2002, pursuant to R.C. 2151.414(B), on a motion filed by CSB on May 30, 2000, pursuant to R.C. 2151.413.
 {¶ 2} This proceeding has an unusual history. Counsel were appointed to represent each parent after CSB filed its motion for permanent custody. Those counsel represented the parents in proceedings before a magistrate, who filed a decision on August 20, 2001. The court adopted the magistrate's decision as its own order on that same date, pursuant to Juv.R. 41(E)(4)(c). Counsel were apparently allowed to withdraw, and each parent then filed a general form of objection, pro se, arguing that their attorneys should not have been permitted to withdraw. New counsel were then appointed.
 {¶ 3} The parents' new counsel filed no additional written objections. The matter eventually came before the court for hearing on February 12, 2002, on the pro se motions the parents had filed. Counsel for Carl McColloch advised the court that he'd not had sufficient time to review the transcript to file written objections. The court advised him and counsel for Frances McColloch that they could proceed orally, and they did.
 {¶ 4} On February 14, 2002 following the hearing, the court recommitted the matter to the magistrate pursuant to Juv.R. 41(E)(4)(b), with directions to "issue a supplemental decision addressing the issue of adjudication." The magistrate's prior decision had apparently not expressly granted custody to CSB.
 {¶ 5} The magistrate filed a supplemental decision on February 20, 2002. The court adopted the decision pursuant to Juv.R. 41(E)(4)(c). The record does not reflect that any objections to the February 20, 2002 decision were filed. However, and thereafter, the court filed its own, separate judgment on March 12, 2002, granting custody to CSB.
 {¶ 6} The magistrate's two decisions each contain findings. The first decision, which the court adopted on August 20, 2001, but which the court subsequently rejected, in part, for lack of an adjudicative order, states:
 "FINDINGS OF FACT" {¶ 7} "Greene County Children Services Board has maintained an open case since 1998 on the McColloch family. On February 1, 1999, Dakota, Kayn and Karleana, the minor children, were removed from their parents' custody due to physical abuse, neglect and dependency. The children were returned on July 16, 1999 and August 12, 1999. The children were placed in the custody of their maternal grandmother on February 28, 2000 and subsequently placed in foster care on March 17, 2000.
 {¶ 8} "When the children were returned to Frances in 1999, services were put in place to assist with preserving the family unit. In spite of the services, the family household deteriorated, the mental stability of Frances deteriorated to the point, as she testified, that she was not cognizant that she was stealing or being charged with a criminal offense. Both Carl and Frances were on probation in Xenia Municipal Court, both have had a history with drugs, Carl was treated at the Christopher House and Frances has a history of mental illness, as she testified, she has tried to commit suicide at least three times prior to 1995.
 {¶ 9} "The testimony presented demonstrates that Frances is able to care for the children for short periods of time, but is quickly overwhelmed and even more so when Carl is factored into the equation.
 {¶ 10} "The Guardian ad litems and Dr. Kelliher submitted reports to the court recommending that it was in the best interest of the children to grant permanent custody to Greene County Children Services Board."
 {¶ 11} The magistrate's second decision, entered after the case was recommitted to the magistrate for an adjudicative order, states:
 {¶ 12} "The Court found that the children lacked proper parental care because of the faults or habits of the parents and their condition or environment was such that it warranted this state, in the interests of the children in assuming guardianship.
 {¶ 13} "The Court heard testimony that both parents at times between February and May, 2000, were incarcerated. In February, 2000, the home was unsanitary, contained a strong odor, dirty, stale food, and the children were inadequately clothed."
 {¶ 14} The trial court's written judgment of March 12, 2002, reviewed the course of the proceedings, and then stated the following:
 {¶ 15} "When the complaint seeking custody was filed . . . the agency had been providing services to the family for approximately eighteen months. Some of the same concerns, such as mental stability and safety of the children, persisted, but new issues also surfaced. Frances was involved in drug trafficking and petty theft. Carl was having difficulties with the law as well, spending periods of time incarcerated and in residential treatment programs. While there is evidence, even from some of CSB's witnesses, which indicates that Frances can be a good parent, there is also ample evidence which supports the Magistrate's finding that Frances is not able to maintain proper care of the children, especially when Carl is in the picture. There was conflicting testimony as to whether Frances was hiding Carl's presence in the home from CSB, but it is the function of the trier of fact to determine which testimony to believe.
 {¶ 16} "Each parent was assessed by Dr. Kelliher to determine the likelihood that the children could be returned to either one within a reasonable time. Dr. Kelliher had previously evaluated the parents, in connection with the initial Complaint filed by CSB. It was Dr. Kelliher's opinion that the children should be placed into the permanent custody of CSB.
 {¶ 17} "The Magistrate applied the appropriate statutory criteria in ruling on the issue of permanent custody. There is sufficient evidence in the record to support the Findings of Fact made by the Magistrate.
 * * * {¶ 18} "The Objections are overruled. The Magistrate's Decision is approved as submitted."
 {¶ 19} Carl and Frances McColloch, who are represented on appeal by another set of appointed counsel, separately and timely appealed to this court. They each presented the same two assignments of error: that the trial court abused its discretion in awarding permanent custody of these children to CSB because that agency did not prove by clear and convincing evidence: (1) that permanent placement with CSB was in the children's best interest, and (2) that the children could not be placed with either parent within a reasonable time, or should not be placed with their parents.
 {¶ 20} We concluded that on the record before us, we could not determine the assigned errors because the trial court's findings of fact and conclusions of law were not sufficient or in proper form. We remanded this matter to the trial court for further findings. In re: DakotaMcColloch, Kayn McColloch and Karleana McColloch (December 20, 2002), Greene App. Nos. 02CA39, and 02CA40. On January 7, 2003, the Juvenile Court filed its findings of fact and conclusions of law pursuant to our remand order. This matter is now before this court for decision on the merits of the assigned errors.
 CARL MCCOLLOCH'S FIRST ASSIGNMENT OF ERROR {¶ 21} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN OVERRULING HIS OBJECTIONS TO THE MAGISTRATE'S DECISION WHEN IT FOUND THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE MINOR CHILDREN COULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME OR AT ALL."
 FRANCES MCCOLLOCH'S SECOND ASSIGNMENT OF ERROR {¶ 22} "THE TRIAL COURT ERRED IN ITS DECISION GRANTING PERMANENT CUSTODY OF THE CHILDREN NAMED HEREIN TO THE GREENE COUNTY CHILDREN SERVICES BOARD BECAUSE IT FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILDREN HEREIN COULD NOT BE PLACED WITH THEIR MOTHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH HER."
 {¶ 23} In these assignments of error, both parents argue that the record does not contain clear and convincing evidence to support the court's finding that these children cannot be placed with either parent within a reasonable time, or should not be placed with their parents.
 {¶ 24} In child custody cases, the focus of any decision must be on what is in the child's best interests. deLevie v. deLevie (1993),86 Ohio App.3d 531, 539. The trial court's discretion should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Miller v. Miller (1988),37 Ohio St.3d 71, 74 (citations omitted).
 {¶ 25} Although the trial court's discretion in a custody case is broad, it is not absolute. In the Matter of Calvin and Tonya Beal
(October 5, 1992), Clark App. No. 2903. A trial court's decision in a custody case is "subject to reversal upon a showing of an abuse of discretion." Miller, supra at 74. `The term "abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 26} R.C. 2151.414(B)(2) governs the termination of parental rights in a natural child when the child is neither abandoned nor orphaned. It provides that a court may grant custody of a child to a movant if the court determines, by clear and convincing evidence, that (1) "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents"; and (2) "it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody." R.C. 2151.414(B)(1). Evidence is clear and convincing if it produces in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus.
 {¶ 27} R.C. 2151.414(E) provides a list of sixteen factors which a court must use to determine whether a child can be placed with his natural parents within a reasonable time, if ever. If the court determines that one or more of these factors exist as to each of the child's parents, the court must find that either the child cannot be placed with his parents within a reasonable time or that the child should never be placed with either parent. Once the trial court finds from all relevant evidence that one or more of these factors exist, it then must consider whether permanent commitment is in the best interest of the child. In re William S., 75 Ohio St.3d 95, 1996-Ohio-182.
 {¶ 28} In determining that these children cannot be placed with either parent within a reasonable time, or should not be placed with their parents, the trial court made the following further findings:
 {¶ 29} "1. On February 1, 1999, Kayn McColloch was adjudicated an abused child, arising from physical injuries (skull fracture and intra-cranial bleeding) inflicted by Carl McColloch. See 11/12/98 complaint and 2/3/99 Judgment).
 {¶ 30} "2. When Carl is in the household, the environment for the children deteriorates. (4/16/01 Transcript, Page 103, Lines 10-16).
 {¶ 31} "3. Carl lacks any concern for the well-being of the children. At the home visit on February 28, 2000, when the residence was in disarray and Frances in distress (3/2/01 Transcript, Page 164, Lines 1-5), Carl simply left the house, neither attending to Frances' nor the children's needs. (3/2/01, Transcript, Page 166, Lines 7-21)
 {¶ 32} "4. The potential harm to the children, posed by risking a return of custody to Frances, only to have that placement disrupted again, is too great. Frances was assessed on two separate occasions by Dr. Kelliher, licensed psychologist. In his second evaluation, his 11/28/00 report contains the following assessment:
 {¶ 33} "If she followed through on recommended treatments and interventions (e.g., medications, therapy, and hands-on parent education) and fully separated herself from Carl, it may be that she would remain stable and be able to care for her children. Given the past record, however, there seems to be too great a likelihood that one or these assumptions would not hold. She might succumb to pressures from Carl, she might stop taking her medications or discontinue therapy (if it were resumed), or the stress of caring for three small children might trigger a relapse even with medications and therapy. The risk of a third crisis and removal is, in my opinion, too great, and I do not believe the children should be exposed to risk of such disruption. They need permanent caretakers, and their best chance of such permanence appears to be through persons other than their parents. This course is all the more difficult to embrace because Frances does appear to be able to take good, appropriate care of her children for short spans of time, but she does not appear likely to be able to maintain such care in the long term' (11/28/00 Report, Plaintiff's Exhibit 3, Page 17, First Paragraph)
 {¶ 34} "5. The children should not be placed with either parent, because despite nearly eighteen months of agency intervention and community-based services, the parents are unable to maintain a safe and secure environment for the children."
 {¶ 35} The trial court's findings implicate one or more of the statutory factors set out in R.C. 2151.414(E) as to each parent. Additionally, those findings are supported by competent, credible evidence in the record. In re Clever (October 18, 2002), Montgomery App. No. 19298, 19299, 2002-Ohio-5588.
 {¶ 36} As to Carl McColloch, on or about February 3, 1999, Kayn McColloch was adjudicated an abused child and removed from the home as a result of serious head injuries she suffered when struck by a toy Carl threw at her in a fit of rage. R.C. 2151.414(E)(3). Carl has also spent several periods of time incarcerated or in residential drug treatment facilities, including periods during which these permanent custody proceedings were pending. During those periods of time Carl was obviously not available to care for the children. R.C. 2151.414(E)(13). In addition, there is evidence that Carl suffers from mental illness and substance abuse problems, that he has in the past mistreated Dakota McColloch and now Dakota mistreats the twins, Kayn and Karleana McColloch, and that on at least one occasion when Frances McColloch was experiencing a severe mental and emotional breakdown and the children needed immediate care, Carl simply left the home. R.C. 2151.414(E)(16).
 {¶ 37} With respect to Frances McColloch, the evidence demonstrates that despite the fact CSB has been providing various community based services to this family for over eighteen months in an effort to remedy the problems that caused the children's removal from the home, Frances has failed to substantially remedy those conditions. R.C.2151.414(E)(1). Some of the initial concerns such as Frances' mental illness and instability, and her inability to cope at times with the stress of caring for her three children persist. In addition, other problems have arisen including Frances' criminal behavior, which includes the sale of drugs from her home when her children were present, and her failure to attend court ordered budgeting classes, and her admission to her mother that she had allowed Carl to stay with her and that she hid him from her caseworkers in violation of the court's order.
 {¶ 38} While there is evidence that Frances has made substantial efforts to improve her ability to care for her children, and is capable of being a good parent for short periods of time if she follows through with all of her recommended treatments and case plan interventions, especially when Carl is not around, there is also competent credible expert testimony from Dr. Kelliher that it is unlikely that Frances will be able to sustain appropriate care of her children long term. In other words, the improvements Frances has made in being able to care for her children are most likely temporary, and she is at high risk for a relapse, notwithstanding medications and therapy. The testimony demonstrates the children's need for a legally secure permanent home which can only be achieved via a grant of permanent custody to CSB.
 {¶ 39} Additionally, there is evidence that at various times this home was filthy and cluttered with stale food, dirty clothes, and on one occasion open pill bottles that were laying about. The children were at times not kept clean. The guardian ad litems and Dr. Kelliher each recommended that CSB be granted permanent custody. R.C. 2151.414(E)(16).
 {¶ 40} To the extent that one or more of the factors in R.C.2151.414(E) exist as to each parent, the trial court was required to find that these children could not be placed with either parent within a reasonable time or should not be placed with their parents. R.C.2151.414(E). That finding is supported by clear and convincing evidence. We see no abuse of discretion on the part of the trial court.
 {¶ 41} These assignments of error are overruled.
 FRANCES MCCOLLOCH'S FIRST ASSIGNMENT OF ERROR {¶ 42} "THE TRIAL COURT ERRED IN ITS DECISION GRANTING PERMANENT CUSTODY OF THE MCCOLLOCH CHILDREN TO THE GREENE COUNTY CHILDREN SERVICES BOARD BECAUSE IT FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO TERMINATE THEIR MOTHER'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO THE AGENCY."
 CARL MCCOLLOCH'S SECOND ASSIGNMENT OF ERROR {¶ 43} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN OVERRULING HIS OBJECTIONS TO THE MAGISTRATE'S DECISION WHEN IT DETERMINED THAT THERE WAS CLEAR AND CONVINCING EVIDENCE THAT THE COMMITMENT OF THE CHILDREN TO PERMANENT CUSTODY TO THE AGENCY WAS IN THE CHILDREN'S BEST INTEREST."
 {¶ 44} In these assignments of error, both parents argue that the record does not contain clear and convincing evidence to support the court's finding that permanent placement of these children with CSB is in the children's best interest.
 {¶ 45} R.C. 2151.414(D) identifies factors a court must consider when determining the best interests of the child. It states that a court shall consider all relevant evidence including, but not limited to:
 {¶ 46} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 47} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 48} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 49} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 50} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 51} In determining that it is in the best interest of these children to grant permanent custody to CSB, the trial court made the following findings relative to each of the factors set out in R.C. 2151.414(D):
 {¶ 52} "(D)(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly effect the child —
 `FINDINGS OF FACT {¶ 53} `1. Despite CSB's involvement with the family for approximately eighteen months prior to the May 30, 2000, Complaint in which permanent custody was sought, the mental instability and actions of the parents continued to place the safety of the children at risk.
 {¶ 54} `2. CSB's involvement with the family began on November 12, 1998, with the filing of a complaint alleging Kayn to be abused and dependent, and alleging Dakota and Karleana to be dependent. The Judgments filed 11/30/98, 2/3/99, 7/9/99, 9/13/99, and 1/28/00 reflect that CSB had been granted protective supervision or temporary custody of the children.
 {¶ 55} `3. On February 28, 2000, CSB had protective supervision of the children. On that date, an employee of A Better Childhood, a county early intervention program for children ages three years and younger, made a pre-arranged visit to the McColloch residence. The parents had advance notice, therefore, of the caseworker's visit that day. Both parents were home at the time. The employee described the condition of the home as follows: "That's probably my third-that was actually my fourth home visit and that was the worst I've ever seen the home. You literally had to move things when you came in the door. There were shoes and clothes and food, and I know-I went over to the couch where Frances was and noticed there was medication bottles, prescription bottles, Pepto Bismol. There was a bowl of cereal on the floor with cigarette butts floating in the milk." (3/2/01 Transcript, Page 169, Lines 9-17) "It was really dirty compared to the other times I had been there. I had never seen it in such disarray. Safety issues were probably the most outstanding thing I noticed, being the medication bottles. There was various bottles out. Some of them were open. My concern would be if the children were up you would definitely have a potential hazardous condition." (3/2/01 Transcript, Page 170, Lines 2-9)
 {¶ 56} `4. The parents allowed the home environment to lapse into a condition which placed the children's safety at risk.'"
 {¶ 57} "(D)(2) The wishes of the child, as expressed by the child or through the child's guardian ad litem, with due regard for the maturity of the child —
 `FINDINGS OF FACT {¶ 58} `1. It is the wish of all three children, as expressed through their guardian ad litem, that they be placed into the permanent custody of CSB. See the CASA Guardian ad Litem Report filed 12/1/00.
 {¶ 59} `2. It is the wish of Kayn McColloch, as expressed by his attorney, Mr. Miles, that he be placed into the Agency's permanent custody. (4/16/01, Transcript, Page 151, Lines 3-7)'"
 {¶ 60} "(D)(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999 —
 `FINDINGS OF FACT {¶ 61} `1. Dakota McColloch was in the temporary custody of CSB from February 1, 1999, to July 16, 1999. See Judgment filed 2/3/99 and 7/9/99.
 {¶ 62} `2. Karleana and Kayn McColloch were in the temporary custody of CSB from February 1, 1999, to August 12, 1999. See Judgment filed 2/3/99 and 7/9/99.
 {¶ 63} `3. When the Court terminated the agency's temporary custody described in paragraphs #1 and #2, custody was returned to Frances McColloch. CSB was awarded protective supervision.
 {¶ 64} `4. On April 3, 2000, interim custody of all three children was awarded to the agency, pending the Complaint for Permanent Custody. See Judgment filed 4/13/00.'"
 {¶ 65} "(D)(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency —
 `FINDINGS OF FACT {¶ 66} `1. The children need a legally secure placement. When the complaint seeking permanent custody was filed on May 30, 2000, the children had been removed twice from the parents during the prior seventeen months.
 {¶ 67} `2. No other relative was available to assume custody. The children's maternal grandmother, Lavina Rash, and the maternal step-grandfather, Ronald Boyer, withdrew their petition for custody in the midst of the permanent custody action. (4/16/01 Transcript, Page 44, Lines 4-11)
 {¶ 68} `3. Because the Court is making a finding herein that the children should not be returned to either parent, the Court is finding that a legally secure placement for the children cannot be achieved without a grant of permanent custody to the agency.'"
 {¶ 69} The evidence presented in this case demonstrates that it is the wish of all three children to be placed in the permanent custody of CSB. R.C. 2151.414(D)(2). These children have been in the temporary custody of CSB for twelve or more months out of a consecutive twenty-two month period beginning February 1, 1999 and ending December 1, 2000. R.C. 2151.414(D)(3). There is also evidence that these children need a legally secure permanent placement that cannot be achieved without a grant of permanent custody to CSB. R.C. 2151.414(D)(4). Additionally, evidence was presented regarding the relationship between the children and their biological parents as well as their foster parents, R.C.2151.414(D)(1), including conflicting evidence as to the degree of bonding between Frances and the twins, Kayn and Karleana. It is of course the duty of the trial court as the trier of facts to resolve conflicts in the evidence by determining the credibility of the witnesses and the weight to be given to their testimony. Clever, supra.
 {¶ 70} We find that there is clear and convincing evidence that supports the trial court's determination that it is in the best interest of these children to award permanent custody to CSB. Thus, there is no abuse of discretion on the part of the trial court.
 {¶ 71} These assignments of error are overruled.
 FRANCES MCCOLLOCH'S SUPPLEMENTAL ASSIGNMENT OF ERROR {¶ 72} "THE TRIAL COURT ERRED IN ADOPTING BOTH THE AUGUST 20, 2001 DECISION OF THE MAGISTRATE AND THE FEBRUARY 20, 2002 DECISION OF THE MAGISTRATE IN SO FAR AS THE MAGISTRATE'S DECISIONS DID NOT CONTAIN SUFFICIENT FINDINGS OF FACT FOR THE TRIAL COURT TO MAKE AN INDEPENDENT ANALYSIS OF SAID DECISIONS."
 {¶ 73} In this assignment of error Defendant argues that the magistrate's decisions in this permanent custody matter did not contain sufficient findings of fact and conclusions of law to enable the trial court to perform its own independent analysis of the magistrate's decision. Thus, the trial court should not have adopted the magistrate's decision.
 {¶ 74} Defendant is challenging the sufficiency of the magistrate's findings. Ordinarily, when a trial court overrules any objections that have been filed and adopts a magistrate's decision, on appeal from that decision we necessarily review the magistrate's findings of fact and conclusions of law in determining whether the trial court abused its discretion. Here, however, on appeal we remanded this matter back to the trial court to enter findings. Our order of remand required the trial court to make its own findings of fact and law, which it did. It is those findings, the trial court's findings of fact and conclusions of law, that we now review on appeal in determining whether the trial court abused its discretion in awarding permanent custody of these children to CSB. The magistrate's findings are moot.
 {¶ 75} This assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.