OPINION
{¶ 1} Joyce Brewer, the maternal grandmother of the children, is appealing the decision of the Common Pleas Court, Juvenile Division, Greene County, awarding permanent custody of the two children to the Greene County Children Services Board (CSB).
 {¶ 2} The appellant's sole assignment of error is as follows:
 {¶ 3} "1. The trial court erred in its decision granting permanent custody of the Brewer children to the Greene County Children Services Board because it failed to prove by clear and convincing evidence that it was in the best interests of the children to grant permanent custody to the agency when there was a suitable relative willing to assume custody."
 {¶ 4} In child custody cases, the focus of any decision must be on what is in the child's best interests. deLevie v. deLevie
(1993), 86 Ohio App.3d 531, 539. The trial court's discretion should be given "the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct." Miller v. Miller (1988),37 Ohio St.3d 71, 74 (citations omitted).
 {¶ 5} Although the trial court's discretion in a custody case is broad, it is not absolute. In the Matter of Calvin and TonyaBeal (Oct. 5, 1992), Clark App. No. 2903. A trial court's decision in a custody case is "subject to reversal upon a showing of an abuse of discretion." Miller, supra at 74. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 6} R.C. 2151.414(B)(2) governs the termination of parental rights in a natural child when the child is neither abandoned nor orphaned. It provides that a court may grant custody of a child to a movant if the court determines, by clear and convincing evidence, that (1) "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;" and (2) "it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody." R.C.2151.414(B)(1). Evidence is clear and convincing if it produces in the mind of the trier of fact "a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of syllabus.
 {¶ 7} In this case on appeal, the trial court held three extensive evidentiary hearings in February, July, and September, 2003, with attorneys present and participating for all interested parties, including the appellant, Joyce Brewer, as well as guardian ad litem representatives. In the judgment entry appealed from, filed after the final hearing, the court stated:
 {¶ 8} "Based upon the evidence presented and the Court's records, the Court makes the following Findings of Fact:
 {¶ 9} "1. Angela Brewer is the natural mother of Shyann Brewer (born 10/7/97), Courtney Brewer (born 1/17/00), and Shanna Brewer (born 3/27/02). Joyce Brewer is the children's maternal grandmother. Shyann's father is Paul Brunk; Courtney's father is Eugene Pugh; Shanna's father is Robert Byers.
 {¶ 10} "2. On February 16, 2000, Greene County CSB filed complaints of neglect and dependency regarding Shyann and Courtney. Angela had been arrested for domestic violence against Joyce, there was ongoing domestic violence between Joyce and her boyfriend, Robert Lucas, and the children had head lice, ear infections and other conditions needing medical attention.
 {¶ 11} "3. On May 18, 2000, the children were adjudicated dependent. Temporary custody of the girls was granted to their uncle and aunt, Finley and Mary Brewer. The agency was awarded protective supervision. The case plan goal was reunification with Angela.
 {¶ 12} "4. In the following months, it was determined that Joyce would take over as temporary custodian while Angela worked the case plan. Joyce was granted custody on January 5, 2001, with the agency continuing to have protective supervision.
 {¶ 13} "5. In August, 2001, Angela was arrested and charged with burglary. She remained incarcerated until her November 27, 2001, sentencing hearing, where she received a 3-year prison term. She is expected to remain in prison until August, 2004. While in prison, Angela has engaged in programs to address behavior and parenting issues, and has had some visits with the girls.
 {¶ 14} "6. Joyce had a relationship with Robert Lucas for about nine years. They never married. Mr. Lucas drank excessively in the presence of the children. Joyce and Mr. Lucas would get into arguments or fights. Sometimes, Joyce would have to move out of the house with the children. She would then return. On August 29, 2001, Joyce was arrested for domestic violence against Mr. Lucas. The children were temporarily cared for by relatives.
 {¶ 15} "7. Mr. Lucas' presence in the home was a negative factor. The agency told Joyce that he needed to be out of the house, and she told him to leave. On November 7, 2001, the agency discovered that Mr. Lucas had moved back into Joyce's home. The children were removed through a voluntary agreement for care, and placed in foster care.
 {¶ 16} "8. CSB's protective supervision was changed to temporary custody on January 25, 2002, after Joyce permitted one of the girls to have unsupervised contact with Joyce's brother, Donald King, a convicted sex offender.
 {¶ 17} "9. As Joyce's relationship with Mr. Lucas was coming to an end, Ms. Brewer began a relationship with Randy Harris, who moved into Joyce's house a few months after Mr. Lucas moved out. Mr. Harris attended the January 22, 2002, hearing with Ms. Brewer when CSB was granted temporary custody.
 {¶ 18} "10. According to Joyce, Mr. Harris `. . . drank beer every day . . .' and the two of them would argue. Sometimes the arguments were so heated that Mr. Harris would move out of the house for awhile. They had an on-again, off-again relationship. Mr. Harris took advantage of Ms. Brewer financially. They discussed getting married but no wedding date was set. Approximately five weeks before the 9/17/03 hearing, the relationship ended and Mr. Harris moved out.
 {¶ 19} "11. Ms. Brewer has a history of relationships with men who mistreat and/or take advantage of her. Their presence is detrimental to the safety of the children. Ms. Brewer's husband, Finley Brewer, Sr., was a drug dealer. He had Joyce take trips to Kentucky to pick up drugs for him. Mr. Brewer had his and Joyce's children help him sell drugs.
 {¶ 20} "12. Ms. Brewer has significant intellectual deficits. She had difficulty learning subjects in school and quit in the 10th grade. According to testing conducted by Dr. Kelliher, Ms. Brewer's Full Scale IQ is 66, which is within the range of mild mental retardation. Ms. Brewer also has substantial memory loss problems, stemming from injuries sustained from an auto accident twelve years ago. Testing done by Dr. Kelliher indicates that Joyce's memory ability is in the lowest one-half of one percent (0.5%) of her age group. Ms. Brewer has serious limitations in her ability to use good judgment in providing care for her granddaughters.
 {¶ 21} "13. Ms. Brewer is genuinely interested in the custody of her grandchildren. She has completed every assessment and program (substance abuse assessment, domestic violence counseling, random drug screens, family preservation program) required by CSB. When Courtney and Shyann were not in her custody, Joyce maintained regular contact with them through visitation. They enjoy interacting with Ms. Brewer. (Joyce has never seen Shanna, who has been in the agency's custody since her birth. When Shanna was born, CSB investigated other relatives for possible placement as CSB had recently removed Courtney and Shyann from Joyce's custody).
 {¶ 22} "14. Paul Brunk is not interested in assuming custody of Shyann. He has advised the CSB caseworkers that he favors the agency obtaining permanent custody. He has not been present at any of the hearings.
 {¶ 23} "15. Eugene Pugh has had limited contact with Courtney. Although he attended the 2/19/03 hearing and was subsequently appointed counsel, he failed to appear for the remaining two hearings. He is presently homeless.
 {¶ 24} "16. Robert Byes has shown no interest in Shyann. He has an extensive criminal record. He failed to attend any of the hearings.
 {¶ 25} "17. The children should not and cannot be placed with either of their respective parents within a reasonable period of time.
 {¶ 26} "18. Courtney and Shyann have always been together, whether with family members or in foster placement. They are strongly bonded toward each other. It is not in the best interest of either child to be separated from the other.
 {¶ 27} "19. Greene County CSB has explored relative placements. The only one that has come forward, other than Joyce Brewer, is Tina and Mark Hill, relatives who live in Texas. They are interested in an adoptive placement only, and are only interested in Shanna.
 {¶ 28} "20. Courtney and Shyann have been in the same foster placement since November, 2001. They have been well cared for by the foster parents. The foster parents and the girls have a loving relationship. Within a month of the girls' placement, Shyann asked the foster parents if she could call them `mommy and daddy.' Shanna is thriving in her foster home as well.
 {¶ 29} "21. It is the recommendation of the Guardians ad Litem that permanent custody of the girls be awarded to CSB.
 {¶ 30} "22. Greene County CSB has made reasonable efforts to avoid removing the children from their home.
 {¶ 31} "23. The children are in need of a legally secure permanent placement. While Joyce Brewer has good intentions and is sincere about her desire to take care of the girls, her intellectual limitations severely undermine her ability to make good judgments that will protect the children. She has consistently developed relationships with men whose life styles create a negative environment for the girls. Courtney and Shyann have been moved in and out of Joyce's home because of the men she involves herself with. A secure placement cannot be achieved without a grant of permanent custody.
 {¶ 32} "24. It is in the best interest of the children that they be placed into the permanent custody of Greene County CSB.
 {¶ 33} "It is hereby Ordered that permanent custody of Shyann Brewer, Courtney Brewer and Shanna Marie Brewer be granted to Greene County Children Services Board." (Docket 99).
 {¶ 34} Appellant essentially argues that the decision granting permanent custody of the children to the Greene County CSB was in error because she is the "suitable relative ready to assume custody." We find a total of eight of the court's specific findings of fact, specifically those numbered 2, 6, 7, 8, 10, 11, 12, and 23, provide competent, credible evidence that the appellant is not a "suitable" relative to assume custody of the Brewer children. From a review of the record and the transcripts of the three hearings, we find more than enough competent, credible evidence to have produced in the mind of the trial court a firm belief of the findings necessary to support the grant of permanent custody of the Brewer children to the Greene County CSB.
 {¶ 35} The assignment of error is overruled, and the judgment is affirmed.
Brogan, J. and Wolff, J., concur.