OPINION
{¶ 1} Plaintiff-appellant Laura Lough (Trickle) appeals from the September 9, 2003, and October 27, 2003, Judgment Entries of the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Laura Lough (Trickle) and appellee James Lough III were married on November 10, 1990. Two children were born as issue of such marriage: Hannah Lough (DOB 3/18/92) and James (DOB 7/11/93).
 {¶ 3} On April 28, 1995, appellant filed a complaint for divorce against appellee in the Licking County Court of Common Pleas, Domestic Relations Division. Pursuant to an Agreed Judgment Entry/Decree of Divorce filed on October 22, 1996, the parties were granted a divorce. As memorialized in the Separation Agreement incorporated into the Divorce Decree, appellee was designated the residential parent and legal custodian of the minor children since appellant worked nights and appellant was awarded specific visitation. The parties agreed that "Local Rule 19's schedule will be seen as a minimum time schedule for the non-residential parent."
 {¶ 4} With respect to child support, the Separation Agreement stated, in relevant part, as follows:
 {¶ 5} "In consideration of each parent's current financial circumstances, in consideration of full financial disclosure concerning their relative incomes, in consideration of the flexibility in the parenting schedule agreed to by the parents, in consideration of the responsibilities of each parent in relation to such schedule and the parenting arrangement to which they have agreed, and in consideration of the basic child support schedule set forth in Section 3113.21 of the Ohio Revised code, the parents have concluded that it would not be in the best interest of the children for the parents to be subjected to strict application of such basic child support schedule. Instead, the parents have concluded that the best interest of the children will be served by Father and Mother each being hereby obligated to provide housing and food for the children in his/her respective home, for the parents to share the cost of clothing, school activities and other expense for the children as hereinafter specified, and for there to be no payment of child support from one parent to the other. Either parent may buy clothing for the children. Such clothing shall be considered the property of the children and shall move between the parents' homes as the children may desire. Payment for any single item of clothing more than $50.00 shall be split equally between the parents if both have agreed in advance to the purchase. The same monetary split shall apply to school or school activity fees or for any specific expense (other than food and housing) that costs more than $50.00."
 {¶ 6} In essence, the Separation Agreement applied a deviation of $4,085.04 to appellant's child support obligation — the entire yearly amount of support.
 {¶ 7} Pursuant to the terms of the Separation Agreement, the parties also agreed to each obtain and maintain in force a life insurance policy having a death benefit of at least $100,000.00, with the two minor children or the survivor of them being named the only primary beneficiaries of each policy. Finally, in the Separation Agreement, the parties agreed that each would contribute $100.00 per month to custodial accounts established for the childrens' college education. The parties further agreed that appellant would contribute one-half of the children's catholic school tuition.
 {¶ 8} Thereafter, on June 8, 2000, appellant filed a "Motion for Contempt; Motion for Attorney Fees; and Motion to Modify Residential Parent Status." Appellant, in her motion, requested that appellee be held in contempt for failure to "follow Rule 19 Visitation as stipulated by the Divorce Decree" and that she be named residential parent of the two children or, in the alternative, that the present order of companionship be modified. On September 19, 2000, appellant filed a proposed shared parenting plan that recommended that the children reside with appellant and appellee on alternating weeks.
 {¶ 9} Thereafter, on September 21, 2000, appellee filed a motion with the court. Appellee, in his motion, requested that the trial court award him guideline child support for the two minor children and that appellee be ordered to pay one-half of the children's private school tuition. With respect to child support, appellee alleged that the parties originally agreed that no support would be paid since appellant had just begun a job as a nurse, but that sufficient time had passed and that appellant was now established in her profession. Appellee, in his motion, further requested that a specific visitation schedule be established between the children and their mother, and that appellant be found in contempt for failing to pay one-half of the children's expenses, to establish college accounts as required by the Separation Agreement and to maintain life insurance.
 {¶ 10} The Guardian Ad Litem, in a report filed on October 18, 2000, recommended that appellee remain the residential parent of the minor children, but that appellant be awarded expanded visitation. The Guardian Ad Litem, in her report, indicated that she hoped a visitation schedule would "assist in eliminating the difficulties between the parties that I believe are having a negative impact on the children's ability to interact freely with both parents."
 {¶ 11} A hearing on appellant's motion to modify parental rights and motion for contempt and appellee's motions for contempt, specific parenting times and child support commenced before a Magistrate on October 19, 2000, and was completed on March 12, 2001. Pursuant to a Magistrate's Decision filed on July 3, 2001, the Magistrate recommended that appellee be found in contempt of court for denying visitation to appellant and that appellee serve ten days in jail, to be suspended on condition that appellee purge his contempt, and that appellee be ordered to pay appellant $500.00 in attorney's fees. The Magistrate further recommended that appellee's motion for support be denied and that appellant's motion to modify the residential parent status and motion for shared parenting be denied, finding that it was not in the best interest of the children, and that appellee's motion to find appellant in contempt for failing to pay one-half of the children's expenses and for failing to establish and pay into college accounts be denied. The Magistrate, in her decision, also recommended that both parties equally pay the childrens' private school tuition and that, in accordance with appellee's motion for specific parenting times, appellant "shall have parenting time in accordance with Local Rule 19 as a minimum."
 {¶ 12} Both parties filed objections to the Magistrate's decision.
 {¶ 13} Subsequently, on October 26, 2001, before the objections had been ruled on, appellee filed a "Motion for Contempt and Reconsideration." Appellee, in his motion, alleged that, since the hearing before the Magistrate, it had come to his attention that appellant and her husband, Steve Trickle, "had received substantial income from the rental of Buckeye Music Center, which is part of Laura Trickle's real estate", and that appellant had the rental checks made payable to Steve Trickle. Appellee further alleged that the rental checks did not show up on Trickle's 1999 income tax return, and that appellant "had the checks made payable to her then boyfriend [Trickle] to hide the income." While appellant's father and uncle own Buckeye Lake Music Center, a business that produces concerts, appellant owns the land on which the concerts are held. Appellee argued that the false testimony of appellant and her husband influenced decisions made by the trial court and that, therefore, such decisions needed to "be reconsidered based on accurate information." Appellee specifically sought reconsideration with respect to appellee's motion for contempt for appellant's failure to pay tuition and establish college accounts and his motion for child support.
 {¶ 14} A hearing on appellee's October 26, 2001, motion for reconsideration was held on December 21, 2001. The Magistrate, in an Amended Decision filed on April 11, 2002, found by a preponderance of the evidence that appellant directed payment of her proceeds from Buckeye Lake Music Center to her husband as a way of minimizing her yearly income and to avoid paying part of those proceeds to appellee. However, the Magistrate further indicated that she could not find, beyond a reasonable doubt, that appellant or her husband, Steve Trickle, committed perjury. Based on the foregoing, the Magistrate recommended that appellee's motion for reconsideration of the child support obligation be granted and that, based on a child support worksheet, appellant pay child support to appellee in the amount of $138.00 per month plus poundage. In arriving at such figure, the Magistrate applied a $4,800.00 child support deviation.
 {¶ 15} On July 3, 2002, appellant filed objections to the Amended Magistrate's Decision.
 {¶ 16} Thereafter, on November 13, 2002, before any objections had been ruled on, appellee filed a second motion for contempt and reconsideration, again alleging that appellant and her husband had lied under oath about their income and that, for such reason, the trial court needed to reconsider issues impacted by income. Appellee, in his motion, alleged that he had discovered that appellant and her husband had testified falsely before the Magistrate and that, contrary to their testimony, deposits from Buckeye Lake Music Center were made into appellant's account.
 {¶ 17} A hearing on appellant's second motion for contempt was held before the trial court. The trial court, in its September 9, 2003, Judgment Entry, noted that "[t]he crux of the testimony provided by the parties is relatively the same as previous hearings with the exception of several key statements made under oath." As memorialized in such entry, the trial court found appellant and her husband in contempt of court. The trial court, in its entry, stated, in relevant part, as follows:
 {¶ 18} ". . . [t]he Court finds beyond a reasonable doubt that the plaintiff and Steve Trickle embarked upon a course of conduct to hide, secret or exchange funds to hide plaintiff's true income as it applied to the establishment of a true child support order so much so that it bordered on a money-laundering scheme.
 {¶ 19} "The evidence is amply sufficient to show plaintiff was well aware of channeling of these deposits and how it would lessen the appearance of her annual income. To further testify repeatedly that this was not the intent of continuous transfers between these accounts constitutes fraud upon the Court."
 {¶ 20} While the trial court declined to enter a jail sentence and suspended a $500.00 fine against both appellant and her husband, it ordered appellant to pay appellee $3,000.00 "as and for attorney fees". The trial court further stated as follows in its September 9, 2003, Judgment Entry:
 {¶ 21} "Finally, the Court determines the conduct of the plaintiff to be so egregious that it requires the Court to void any deviation of the child support order of the plaintiff.
 {¶ 22} "As noted, the very basis for the child support deviation was the consideration of full financial disclosure concerning their relative incomes. The plaintiff simply ignored that provision and, as the evidence confirmed, elected to circumvent that condition.
 {¶ 23} "Accordingly, the Court vacates the deviation established in the Magistrate's Decision and orders the plaintiff to pay child support of $538.00 per month plus processing fees effective October 26, 2001."
 {¶ 24} On the same date, the trial court filed an Opinion resolving the objections to the Magistrate's decision.
 {¶ 25} Finally, on October 27, 2003, the trial court filed a Judgment Entry granting appellant's motion to hold appellee in contempt for denying appellant visitation with the children and ordering appellee to pay appellant $500.00 in attorney's fees. The trial court, in its entry, also denied appellant's motion to modify the residential parent status and motion for shared parenting and appellee's motion that appellant be found in contempt for failing to pay one-half of the childrens' expenses and for failing to establish and fund the college accounts. The trial court also granted appellee's motion for specific parenting time and established a visitation schedule.
 {¶ 26} It is from the trial court's September 9, 2003, and October 27, 2003, Judgment Entries that appellant now appeals, raising the following assignments of error:[1]
 {¶ 27} "I. The trial court erred to the prejudice of the appellant and abused its discretion by holding two contempt hearings on the same issue and by finding the appellant in contempt of court.
 {¶ 28} "II. The trial court erred in issuing two judgments, thereby rendering the first judgment of September 9 void and of no effect based upon principles of res judicata.
 {¶ 29} "III. The trial court erred in failing to file a child support guidelines worksheet with its decision.
 {¶ 30} "IV. The trial court erred and abused its discretion by eliminating the child support guidelines deviation.
 {¶ 31} "V. The trial court erred and abused its discretion by ordering a retroactive modification of child support and by using improper and incorrect figures in the child support guidelines worksheet.
 {¶ 32} "VI. The trial court erred and abused its discretion in its award of attorney fees to the appellee.
 {¶ 33} "VII. The trial court erred and abused its discretion in its failure to approve appellant's proposed shared parenting plan or to modify residential parent status of the parties' minor children."
 I {¶ 34} Appellant, in her first assignment of error, argues that the trial court erred by holding two contempt hearings on the same issue and by finding appellant in contempt of court. We disagree.
 {¶ 35} Appellant initially argues that the trial court erred in holding a second contempt hearing as a result of appellee's motion for reconsideration since "there is no such thing in the law as a Motion for Reconsideration, . . . in a court of original jurisdiction." Although a motion to reconsider a final order is a nullity, one can seek reconsideration of an interlocutory order. See Pitts v. Dept. of Transp. (1981), 67 Ohio St.2d 378,423 N.E.2d 1105, and Carnavale v. Carnavale (June 29, 2001), Trumbull App. Nos. 2000-T-0013, 99-T-0113, 99-T-0164, citingPitts, supra at 378, 379, fn. 1. In the case sub judice, appellee was not seeking reconsideration of a final order. Thus, the court did not err in considering appellee's motion for reconsideration.
 {¶ 36} Appellant, in her second assignment of error, further argues that the trial court violated principles of double jeopardy by retrying appellant for contempt.
 {¶ 37} As is stated above, after the Magistrate issued her original Decision, appellee, on October 26, 2001, filed a motion for contempt, alleging that appellant and her husband had lied under oath about their income. A hearing before the Magistrate was held on December 21, 2001, and the Magistrate, in an Amended Decision filed on April 11, 2002, recommended that appellee's motion for contempt be denied. Thereafter, before the trial court ruled on the pending objections to the Magistrate's Decision and Amended Decision, appellee filed a second motion for contempt, alleging that appellant and her husband had lied under oath at the hearing before the Magistrate.
 {¶ 38} Following a hearing, the trial court, as memorialized in a Judgment Entry filed on September 9, 2003, found appellant and her husband in contempt of court "for misleading and untruthful statements." Appellant now argues that "the second trial held against the Appellant upon the same charge of contempt violated the constitutional prohibition against double jeopardy."
 {¶ 39} Civ.R. 53 (E)(4)(b) states, in relevant part, as follows: "Disposition of objections. The court shall rule on any objections the court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter
. . ." (Emphasis added). Thus, the trial court was free to consider additional evidence on the contempt issue before ruling on the pending objections. Furthermore, while appellant argues that "the trial court created a disaster by hearing the same case twice and coming down with inconsistent rulings," we note that the Magistrate Decision does not become effective until adopted by the court. See Civ. R. 53(E)(4)(a). Thus, the Magistrate's recommendation that appellant not be found in contempt was only a recommendation to the trial court, not an order or ruling.
 {¶ 40} Appellant further argues that the trial court erred in finding appellant in contempt of court. Appellant specifically contends that the witnesses who testified at the hearing were not credible and were biased against appellant. However, the trial court as trier of fact, was in the best position to assess credibility and clearly found such witnesses credible. Furthermore, since there is no transcript of the January 22, 2003, contempt hearing before the trial court, this Court must presume the regularity of the proceedings below and affirm pursuant to the directive set forth in Knapp v. Edwards Lab . (1980), 61 Ohio St.2d 197, 400 N.E.2d 384.
 {¶ 41} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 42} Appellant, in her second assignment of error, argues that the trial court erred in entering two Judgment Entries that conflict and are irreconcilable, thereby rendering the first Judgment Entry "void and of no effect." We disagree.
 {¶ 43} Appellant specifically contends that the trial court's September 9, 2003, and October 27, 2003, Judgment Entries conflict and cannot be reconciled. According to appellant, while the trial court, in its September 9, 2003, Judgment Entry found appellant in contempt, the trial court, in its subsequent October 27, 2003, Judgment Entry declined to do so.
 {¶ 44} As is stated above, after appellee filed a motion for contempt and reconsideration, the Magistrate, on April 11, 2002, filed an Amended Magistrate's Decision. The Magistrate, in such decision, recommended that the trial court enter an order denying appellee's motion to find appellant in contempt for knowingly offering false or perjured testimony. Before any objections were ruled on, appellee filed his second motion for reconsideration.
 {¶ 45} Thereafter, the trial court, pursuant to a Judgment Entry filed on September 9, 2003, expressly found appellant and her husband in contempt of court "for misleading and untruthful statements."
 {¶ 46} Subsequently, the trial court, in its October 27, 2003, Judgment Entry, ordered that "[t]he Amended Magistrate's Decision filed April 11, 2002, as modified by the Opinion andnot in conflict with the Judgment filed September 9, 2003, is incorporated herein by reference." (Emphasis added). Thus, as noted by appellee in his brief, the October 27, 2003, Judgment Entry, as evidenced by the underlined language, reconciled any differences between the two Judgment Entries. Thus, the September 9, 2003, and October 27, 2003, Judgment Entries do not conflict and are not irreconcilable.
 {¶ 47} Appellant's second assignment of error is, therefore, overruled.
 III {¶ 48} Appellant, in her third assignment of error, asserts that the trial court erred in failing to file a child support guidelines worksheet with its September 9, 2003, Judgment Entry. We disagree.
 {¶ 49} The Ohio Supreme Court has found that R.C. 3113.215
mandates that a court complete a child support computation worksheet. Marker v. Grimm (1992), 65 Ohio St.3d 139, 141-42,601 N.E.2d 496. Revised Code 3113.215 has been repealed and replaced by R.C. 3119.02, which includes the identical language as the former statute, concerning the responsibility of the court to calculate the amount of child support in accordance with the child support schedule and applicable worksheet. If completion of a worksheet is required, the trial court must include the worksheet in the record. Id. at 142.
 {¶ 50} This court has previously held that while the trial court is responsible to ensure that a child support computation worksheet is completed and is correct, Marker did not intend to require a trial court to prepare a worksheet identical to a worksheet already prepared and filed by a party, and the court may therefore adopt a worksheet by one of the parties which it finds to be correct. Young v. Young (Sept. 26, 2000), Tuscarawas Appellate No. 1999AP110060, 2000 WL 1724904.
 {¶ 51} In the case sub judice, a child support worksheet was attached to the April 11, 2002, Amended Magistrate's Decision that calculated child support at $6,456.00 per year ($538.00 per month), but then applied a deviation of $4,800.00 to arrive at a child support figure of $138.00 per month. The trial court, in its October 27, 2003, Judgment Entry, ordered appellee to pay $538.00 per month in child support, thus rejecting the recommended deviation. Thus, contrary to appellant's assertion, a child support guidelines worksheet was filed.
 {¶ 52} Appellant's third assignment of error is, therefore, overruled.
 IV {¶ 53} Appellant, in her fourth assignment of error, argues that the trial court erred by eliminating the child support guidelines deviation. We agree.
 {¶ 54} It is well settled that a trial court possesses substantial discretion in decisions regarding child support obligations, and such decisions will be reversed only upon finding an abuse of discretion. Pauly v. Pauly,80 Ohio St.3d 386, 390, 1997-Ohio-105, 686 N.E.2d 1108, citing Booth v. Booth
(1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 55} In the Divorce Decree in the case sub judice, a $4,085.05 deviation was applied to appellant's child support obligation pursuant to the agreement of the parties. As a result, appellant paid no child support. After appellee filed his initial motion for reconsideration, the Magistrate, in her Amended Decision, addressed the issue of child support. The Magistrate specifically made the following findings with respect to child support:
 {¶ 56} "28. The Magistrate finds, from the competent and credible evidence adduced during the hearings in October 2000 and March 2001, that defendant earns $50,213.00 per year. The Magistrate further finds from the evidence that defendant earns $32,000.00 per year as a result of her employment as a nurse, and that she further receives an average $20,000.00 per year from Buckeye Lake Music Center for "land rent". The Magistrate incorporates herein the findings of fact numbered 1 through 25 above.
 {¶ 57} "29. The Magistrate finds that the child support obligation has not been modified since October 1996.
 {¶ 58} "30. In the October 1996 Decree of Divorce, a deviation was applied to plaintiff's child support obligation. The deviation was in the amount of $4,085.04 — the entire yearly amount of support. The deviation was not quantified in terms of the amounts allotted to certain expenses that plaintiff would incur under the Separation Agreement. When the support was initially calculated in 1996, plaintiff was shown as earning $30,000.00 per year and defendant was shown as earning $71,800.00 per year."
 {¶ 59} "31. At least $2,800.00 of the initial deviation amount could be attributable to one-half of the private school tuition, each party having agreed to equally divide the tuition expense. The remaining amount of the deviation could reasonably be attributable to additional educational expenses (school fees, uniforms, etc.) as well as extracurricular activities for the children. The deviation amount ($4,085.00) less the tuition expense ($2,800.00) would have resulted in a $1,285.00 remainder for the additional anticipated expenses for the children. This $1,285.00 figure represents 31% of the total amount of the deviation in 1996.
 {¶ 60} "32. The attached guideline child support worksheet shows that the basic guideline amount of support for plaintiff would be $6,456.00 per year. The Magistrate finds here, just as she did in the Decision filed July 3, 2001, that the deviation factors upon which the Court relied in making the initial determination of support when the decree was filed should still be considered in reviewing, or considering a modification to, the child support obligation. Specifically, a deviation is provided in the amount of $2,800.00 (school tuition) and the additional amount of $2,000.00 for a total deviation in the amount of $4,800.00. This additional sum of $2,000.00 was determined by applying the same percentage in deviation that was applied in 1996 ($1,285.00/$4,085.00 = 31%, therefore, 31% × $6,456.00 = $2,000.00)."
 {¶ 61} After appellee filed objections to the Amended Magistrate's Decision with respect to the issue of child support, the trial court, in an Opinion [not a Judgment Entry] filed on September 9, 2003, overruled appellee's objections and found the Magistrate's deviation to be warranted. The trial court, in its Opinion, noted that the parties originally "agreed to deviate the plaintiff's child support order from $4,085.00 to zero" based on the parties' respective financial situations, full financial disclosure and the parties' agreement concerning flexibility in the parenting schedule. The trial court further noted that while appellant failed to fully disclose her finances, appellee, in turn, had "failed to adhere to flexibility standard of parenting times" and that while the parties combined incomes had stayed the same, the percentages had shifted.[2]
 {¶ 62} The trial court, in a Judgment Entry filed on September 9, 2003, addressed appellee's second motion for contempt and reconsideration. After finding appellant in contempt for "misleading and untruthful statements" regarding her annual income, the trial court vacated the deviation established in the Magistrate's Amended Decision and ordered appellant to pay child support in the amount of $538.00 per month plus processing fees, effective October 26, 2001. The trial court, in so ruling, noted that the child support deviation was based on the parties' full disclosure regarding their respective incomes and that appellant "simply ignored that provision and, as the evidence confirmed, elected to circumvent that condition."
 {¶ 63} Thereafter, the trial court, in its October 27, 2003, Judgment Entry, stated as follows:
 {¶ 64} "The Plaintiff, as obligor, shall pay child support to the Defendant, as obligee, in the amount of $138.00 per month plus processing charge effective October 26, 2001 pursuant to the Magistrate's Decision. However, said child support amount wasmodified by Judgment filed September 9, 2003, and the amount inthe September 9, 2003, Judgment ($538 per month, plus processingcharge effective October 26, 2001) is the amount the Plaintiff isOrdered to pay." (Emphasis added).
 {¶ 65} R.C. 3119.22 states, in relevant part, as follows: "The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child."
 {¶ 66} In turn, R.C. 3119.23 provides as follows:
 {¶ 67} "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section3119.22 of the Revised Code:
 {¶ 68} "(A) Special and unusual needs of the children;
 {¶ 69} "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
 {¶ 70} "(C) Other court-ordered payments;
 {¶ 71} "(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
 {¶ 72} "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
 {¶ 73} "(F) The financial resources and the earning ability of the child;
 {¶ 74} "(G) Disparity in income between parties or households;
 {¶ 75} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 {¶ 76} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 {¶ 77} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 {¶ 78} "(K) The relative financial resources, other assets and resources, and needs of each parent;
 {¶ 79} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 {¶ 80} "(M) The physical and emotional condition and needs of the child;
 {¶ 81} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 {¶ 82} "(O) The responsibility of each parent for the support of others;
 {¶ 83} "(P) Any other relevant factor."
 {¶ 84} In the case sub judice, the Magistrate cited to R.C.3119.23(H), (J), (K), and (L), cited above, in determining that a deviation in the amount of child support was proper. Thereafter, the trial court, after determining in its September 9, 2003, Opinion that a deviation in child support was warranted, voided and vacated the same pursuant to a Judgment Entry filed on the same day based on appellant's misconduct in failing to disclose her full financial status. However, we find no statutory or other authority for the trial court's action in vacating the deviation purely as a form of punishment. There is no evidence that the trial court considered the factors and criteria in R.C. 3119.23
in determining whether a deviation was appropriate and that the trial court considered what was in the best interest of the children.
 {¶ 85} Appellant's fourth assignment of error is, therefore, sustained.
 V {¶ 86} Appellant, in her fifth assignment of error, maintains that the trial court erred in its method of calculating retroactive child support and in using improper and incorrect figures in the child support guidelines worksheet.[3]
 {¶ 87} Appellant argues that the trial court retroactively ordered support to October 26, 2001,[4] but failed to issue a child support worksheet using the parties' income in 2001. However, the Magistrate, in her Amended Decision, indicated that based on the hearings in October, 2000, and March, 2001, appellant earned $50,213.00 per year and received on average $20,000.00 a year from Buckeye Lake Music Center. These are the figures that the Magistrate plugged into the child support computation worksheet attached to her Amended Decision. As appellee notes in its brief, appellant has failed to allege exactly what figures are incorrect.
 {¶ 88} Appellant also argues that the trial court used incorrect figures in setting child support. Appellant specifically contends that the trial court erred in adding $20,000.00 to appellant's income, which represents the income from Buckeye Lake Music Center that appellant failed to disclose to the court. Appellant notes that the Magistrate found that appellant, who earns $32,000.00 as a nurse, had only been paid $5,500.00 in 2001, rather than $20,000.00, in concert proceeds. Thus, appellant argues, the trial court should have assigned appellant an income of $37,550.00 ($32,000.00 plus $5,500.00) in calculating child support.
 {¶ 89} While the Magistrate, in her Amended Decision, did find that appellant received only a payment in the amount of $5,550.40 in 2001, the Magistrate further found that appellant's husband was paid $22,000.00 in 2000 and $18,000.00 in 1999 by Buckeye Lake Music Center and that appellant directed such payments to her husband as a way of minimizing her yearly income. While appellant argues that the Magistrate's finding that appellant received $20,000 from Buckeye Lake Music Center is not supported by the evidence, at the December 21, 2001, hearing before the Magistrate, appellant's own father, who is in a partnership with appellant and Michael Szymanski, appellant's uncle, testified that the checks were made out to appellant's husband rather than appellant because appellant "wanted all the checks written to Steve so she wouldn't have to share any money with Jim [appellee]." Deposition of December 21, 2001, hearing at 45. Michael Szymanski, appellant's uncle, also testified that appellant had Buckeye Lake write the checks payable to appellant's husband, rather than appellant, in order to keep from having to pay any of the concert proceeds to appellee, her ex-husband.
 {¶ 90} Based on the above testimony, the Magistrate found that appellant received "on average" $20,000.00 from Buckeye Lake Music Center in addition to her $32,000.00 salary as a nurse. While appellant argues that the above testimony is not credible, the Magistrate was in the best position to assess credibility and was free to believe such testimony.
 {¶ 91} Based on the foregoing, we find that the trial court did not use incorrect figures in setting child support.
 {¶ 92} Appellant's fifth assignment of error is, therefore, overruled.
 VI {¶ 93} Appellant, in her sixth assignment of error, contends that the trial court erred in awarding attorney's fees to appellee. We disagree.
 {¶ 94} An award of attorney fees in post-decree domestic relations proceedings is within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356, 359,481 N.E.2d 609. It is well-established that an abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. Further, "[w]hen the amount of time and work spent on the case by the attorney is evident, an award of attorney fees, even in the absence of specific evidence, is not an abuse of discretion." Babka v. Babka (1992), 83 Ohio App.3d 428, 435,615 N.E.2d 247. A trial court may use its own knowledge in reviewing the record to determine the reasonableness of attorney fees. Whitaker v. Estate of Whitaker (1995),105 Ohio App.3d 46, 56, 663 N.E.2d 681 (citing Gearig v. Gearig (Mar. 31, 1993), Lucas App. No. L-92-150, unreported, 1993 WL 93525, andDillon v. Dillon (Sept. 20, 1988), Franklin App. Nos. 88AP-232 and 233, 1988 WL 99324.
 {¶ 95} The Magistrate, in her original July 3, 2001, Decision, and her April 11, 2002, Amended Decision recommended that appellee found in contempt for denying companionship to appellant and that appellee be ordered to pay $500.00 in attorney's fees to appellant. Such recommendation was adopted by the trial court. Thereafter, the trial court, in its September 9, 2003, Judgment Entry, found appellant in contempt for misrepresenting her income and ordered her to pay $3,000.00 in attorney's fees to appellee. As memorialized in its October 27, 2003, Judgment Entry, the trial court ordered the two amounts to be offset, the net result being that appellant was ordered to pay appellee $2,500.00 in attorney's fees.
 {¶ 96} Upon our review of the record, we cannot say that the trial court abused its discretion in awarding $3,000.00 in attorney fees to appellant. According to the record, as a result of appellant's failure to disclose her income from Buckeye Lake which was discovered after hearings before the Magistrate on October 19, 2000, and March 12, 2001, a hearing before the Magistrate was held on December 21, 2001, and, after it was alleged that appellant had lied before the Magistrate, a subsequent hearing was held before the trial court. Based on the lengthy hearings necessitated by appellant's failure to be truthful, we cannot say that the trial court abused its discretion. Furthermore, there is nothing prohibiting the trial court from offsetting the $500.00 owed to appellant against the $3,000.00 owed to appellee.
 {¶ 97} Appellant's sixth assignment of error is, therefore, overruled.
 VII {¶ 98} Appellant, in her seventh assignment of error, maintains that the trial court erred in failing to approve appellant's proposed shared parenting plan or to modify the residential parent status of the parties' minor children. We disagree.
 {¶ 99} The trial court is vested with broad discretion to decide matters relating to the allocation of parental rights and responsibilities for the care of minor children, and its decision is subject to reversal only upon the showing of an abuse of discretion. Masters v. Masters, 69 Ohio St.3d 83, 85,1994-Ohio-483, 630 N.E. 665. The abuse of discretion standard extends to a decision as to whether or not to order shared parenting. DeLevie v. DeLevie (1993), 86 Ohio App.3d 531,621 N.E.2d 594. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140.
 {¶ 100} R.C. 3109.04(F) states in relevant part, as follows: "(2) In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:
 {¶ 101} "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;
 {¶ 102} "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;
 {¶ 103} "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;
 {¶ 104} "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;
 {¶ 105} "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.
 {¶ 106} "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
 {¶ 107} "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
 {¶ 108} "(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
 {¶ 109} "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
 {¶ 110} "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
 {¶ 111} As is stated above, appellee originally was designated the children's residential parent and legal custodian. At the hearing before the Magistrate, Jennifer Amos, the children's Guardian Ad Litem, testified that appellant and appellee did not communicate well and that appellant's proposed shared parenting plan, pursuant to which appellant would have the children every other week, would cause disruption. The Magistrate, in her July 3, 2001, Decision, and her April 11, 2002, Amended Decision, noted that the parties "demonstrated a complete lack of ability to work with each other," that the children were doing well in school and had not exhibited any "outward manifestations of any physical or behavioral problems." Furthermore, there was evidence that the parties lived a half an hour apart.
 {¶ 112} While appellant argues that the trial court erred in refusing to adopt her shared parenting plan since the children have a close relationship with appellant and her family, appellant volunteers at and participates in the childrens' school, and, while appellee has to leave the children with a nanny while he works, appellant is able to be with the children a substantial amount of time due to her work, we cannot say that the trial court's decision constituted an abuse of discretion.
 {¶ 113} Appellant's seventh assignment of error is, therefore, overruled.
 {¶ 114} Accordingly, the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed and remanded in part.
Edwards, J. and Boggins, J. concur.
Wise, P.J. concurs and dissents.
[1] While appellant filed separate Notices of Appeal from the two Judgment Entries, the two cases were consolidated.
[2] While appellee was earning less since the initial Divorce Decree was filed, appellant was earning more.
[3] Appellant, in her discussion of the fifth assignment of error, does not present arguments regarding the use of the retroactive date of October 26, 2001 for child support and, therefore, we will not address it.
[4] Appellee's "Motion for Contempt and Reconsideration" was filed on such date.